JULIA FUGURE *v.* THE MUTUAL SOCIETY OF ST. JOSEPH, OF BUR-
LINGTON.

*Contract. Associations. Corporations. Vested Rights. Alter-
ation of By-Laws.*

The legal interest in a contract is in him to whom the promise is made, and from whom the consideration moves; and he alone, or his legal representative, can maintain an action at law thereon.

In 1862, when F. became a member of a voluntary charitable association, the by-laws thereof provided that members paying the regular assessments, should be entitled to 25 cents per day during their sickness; that the society would pay 25 cents per day to the widow of each member, so long as she remained a widow, &c.; and that the society should not reduce its aid to the sick, so long as $20 remained in the treasury. Said by-laws also provided for amendments thereof, and how they should be made. In 1868, said association was incorporated by act of the legislature, which provided that it might alter or change its by-laws. The by-laws in force at the time of the passage of said act, were continued in force till August, 1869, when the society adopted new by-laws, whereby it was provided that such widows should receive 25 cents per day, until they had received $200. F. died January 5, 1869. The plaintiff was his widow, and had received the $200 aforesaid, and brought suit to recover at the rate of 25 cents per day, which would amount to more than $200. *Held*, that said society had the right to amend its by-laws as aforesaid, and that the plaintiff, having received said $200, was precluded from further recovery.

ASSUMPSIT to recover certain sums of money claimed to be pay-able by virtue of certain by-laws of the defendant. The action was commenced in the city court of Burlington, and came to the county court by appeal. Plea, the general issue, with an agree-ment that it should embrace all matters of defence arising under the following statement of facts, upon which the case was tried.

The plaintiff is the widow of Isaac Fugure, who became a member of the defendant society on the 5th of January, 1862. Said society was then a voluntary, unincorporated association, having been founded and established in August, 1859, and was acting under a set of rules and regulations published in 1860, of which the following is all that is material to be stated.

" The end of St. Joseph's Mutual Society, of Burlington, is to provide to its members succor in their sickness ; and, by the christian spirit of association, to encourage each other to the practice of virtue in their state of life—altogether in reanimating between themselves the sentiments of their nationality. To attain this end, which is as honorable as it is necessary, the associates engage to re-unite themselves in frequent assembly, and, in common to put an assessment, determined to form a reserve fund, from which, according to the conditions expressed in these present statutes, each member will have a right to a temporary daily pecuniary aid.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Chap. IV. Sec. 1. " All members six months after their reception, shall be entitled to 25 cents per day during their sickness.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

Sec. 4. " The society will pay 25 cents a day to the widow of each member deceased, so long as she shall remain a widow, and shall enjoy a good reputation,—that is to say, so long as she shall conduct herself like an honest and virtuous woman. However, the widow shall have no right to this support, unless her deceased husband shall have been a member at least a full year from his admission, and unless at his decease he was not owing more than a month's assessment, nor more than 25 cents fine to the society.

Chap. X. Sec. 2. " So long as there shall he $20 in the treasury, the society can not reduce its aid to the sick. \*    \*

Sec. 3. " No change shall be made to the present by-laws, that has not been submitted to the council a month in advance, discussed before it for three sessions, and finally decided in general assembly, by the ordinary way of suffrage, or ballot."

The said Issac continued a member of said association, and of the corporation hereinafter mentioned, in good and regular standing, and not at any time in arrears, either in dues or fines, until his death, which took place in the city of Burlington, on the 5th of January, 1869. While he was such member, he paid all dues, assessments, contributions, and fines, required by the by-laws, rules, and constitutions of said society, and was always a paying member. In 1866, while he was a member of said society as aforesaid, the society adopted, and thereafter, until the adoption

of a new constitution and by-laws and rules on the 4th of August, 1869, as hereinafter stated, acted under a new code of by-laws published in 1866.

The third section of said by-laws was like the fourth section of Chap. IV. of those of 1860, above given, and provided that the allowance thereby granted, was granted only in case there should be $25 in the treasury. The following were also a part of said by-laws.

Chap. IX. Sec. 2. "So long as there shall be twenty-five dollars in the treasury, the society shall not reduce its aid to the sick.     *     *     *     *     *     *     *     *     *

Sec. 3. "No change shall be made to the present regulations, unless it has been offered to the council a month in advance, to be discussed during two meetings, and finally settled at a general assembly, by the ordinary way of suffrages."

At the session of the legislature in 1868, an act was passed entitled "An act to incorporate the 'Mutual Society of St. Joseph, of Burlington,'" which was approved November 19th, 1868. Said act was duly accepted by said association on the 24th of December, 1868, and the organization of the corporation so created has been ever since kept up, and is the present defendant. Said corporation performed the rites of burial for said Isaac Fugure, and immediately after his death, commenced the payment of the allowance of twenty-five cents per day to his widow, the plaintiff, in accordance with said sec. 3 of chap. IV. of the by-laws published in 1866, and continued to pay her twenty-five cents per day until they stopped as hereinafter stated. On the 4th day of August, 1869, said corporation regularly adopted a constitution and by-laws, in lieu of those last mentioned, and have ever since acted under them. The following is a part of article 12, of said constitution :

Sec. 1. "The society will pay 25 cents per day to the widow of a deceased member (in full of her right), until she gets $200, provided the widow remains a widow, and be of good character."
     *     *     *     *     *     *     *     *

The same provision to widows is contained in sec. 1, article 16, of the regulations adopted at the same time. Said corporation continued to pay to the plaintiff as the widow of said Isaac, the sum of 25 cents per day until the whole sum so paid amounted to $200, and then, on the 16th of March, 1871, stopped such payment, and refused to pay any more, claiming, that by virtue of the alteration of the by-laws in August, 1869, and under the same, they were not bound to pay her any more. This action was brought to recover the sum of 25 cents per day from the 5th of

January, 1869, the day of the said Isaac's death, to the 20th day of May, 1872, the date of the commencement of this action, less the $200 which has been paid to the plaintiff as aforesaid. The plaintiff has not remarried since the death of her husband; has always, and does now, sustain a good character; and has always resided in the city of Burlington; and ever since the death of the said Isaac, there has always been more than $25 in the defendant's treasury.

The court, at the September term, 1873, PIERPOINT, Ch. J., presiding, rendered judgment for the defendant, *pro forma,* and discharged the trustee; to which the plaintiff excepted.

*R. H. Start,* for the plaintiff.

The case shows that a contract was made on the 5th of January, 1862, by and between Isaac Fugure and the defendant, upon a valuable consideration, for the benefit of the said Isaac during his lifetime, and upon his death for the benefit of his widow, the plaintiff. The consideration moved from the said Isaac, and upon that consideration, the defendant promised him, upon his death, to pay to the plaintiff certain sums of money for her benefit. It was a promise to him for her sole and personal benefit, and hence, a contract in which she alone is beneficially interested, and therefore she can maintain this action. 1 Chit. Pl. 4, 5, note 1; *Schermerhorn* v. *Vanderheyden,* 1 Johns. 139; *Rutland & Burlington R. R. Co.* v. *Cole,* 24 Vt. 33. By the terms of the contract, the society agreed and promised, in substance, that in consideration that the intestate would become a member of the society, and pay certain sums of money during his lifetime, and comply with certain other conditions, which were all performed, it would, upon his death, pay to the plaintiff during her life or widowhood, the sum of twenty-five cents per day. During her husband's life, her interest was contingent and inchoate, and liable to be defeated by any lawful act of his; but upon his death, her interest, or right, became vested and absolute—a vested right to certain sums of money. Her interest may properly be defined as a vested right of action. Such a right is property, within the protection of law, as much as a promissory note or bill of exchange. Cooley Const. Lim. 362.

The contract conferring upon the plaintiff a vested right of property, can the defendant lawfully take away that right in the manner attempted ? This must depend entirely upon the question, whether the contract creating and conferring the right, expressly reserved to the defendant the right so to do; for, unless such right is reserved, it does not exist. It is clear, we insist, that the contract does not expressly or by necessary implication, reserve such authority. The case, therefore, comes within the familiar and well settled rule of law, that where vested rights are sought to be divested or impaired by virtue of a right or authority claimed to be reserved by the contract, or by the law, charter, or statute under, and upon the faith of which, the right was created, bestowed, or accrued, such right or authority must be reserved in clear, unequivocal, and explicit terms.

But, it may be claimed that because the intestate was a member of the society at the time of the adoption of its act of incorporation, which contained a provision authorizing it to " make, alter, and repeal all such rules, by-laws, and regulations as may be deemed necessary to carry into effect the provisions of said act, not repugnant to the laws of this state or the United States," that thereby the original contract between him and the society was modified and changed, by conferring upon the society the right to impair or cut off the right of the plaintiff when it should see fit. But we insist that the charter confers no such right or power. It only authorizes the society to make by-laws, to carry into effect the provisions of said charter not *repugnant to the laws of this state or the United States.* The by-law by which the defendant has attempted to cut off the plaintiff's rights, if it can be said to apply to her case, cannot be sustained for the following reasons: it is not a by-law to carry into effect any provision of the charter; it destroys or impairs vested rights, and is, therefore repugnant to the laws of this state, and of the United States ; it is unreasonable, unjust, and against common right ; it is retrospective in its operation, and, therefore void, not only at common law, but under the constitution of the United States, as it impairs vested rights. Angell & Ames Corp. § 339 ; *Satterlee* v. *Matthewson,* 2 Pet. 380. But § 1, article 12, of the constitution of Aug. 4, 1869, is not

retrospective. In the construction of a by-law which it is claimed should have a retrospective effect, we assume that the same rule would apply as in a similar question upon a statute, to wit, that a statute should not be construed to have a retrospective effect, unless such intent be expressed in the statute in clear and explicit terms. Sedgw. Stat. Law, 192, 195; *Briggs* v. *Hubbard*, 19 Vt. 86.

But had the by-laws under which the plaintiff's rights accrued and become vested, contained a general provision reserving to the society the right to alter, amend, or repeal them, we insist it could not even then, by altering or amending them, take away or impair the vested rights of the plaintiff. *Commonwealth* v. *Essex Co.* 13 Gray, 253.

Finally, it may be claimed that the defendant is not the party with whom the intestate contracted; that the party with whom he contracted has been merged in a new and different party, being a corporation.

*William G. Shaw* and *Henry Ballard*, for the defendant.

Neither upon the declaration or proof is the plaintiff entitled to recover. If any contract was made, it was with Isaac Fugure. The consideration moved from him; the promise was made to him; and though that promise, or rather one branch of it, may have been to pay money to another party, still the right in action is solely in him, or, in case of his death, in his personal representative. This is the most ancient and the most modern doctrine in England, and has always been the well settled law in this state. Chit. Cont. 54; *Crow* v. *Rogers*, Stra. 592; *Bourne* v. *Mason*, 1 Vent. 6; *Price* v. *Easton*, 4 B & Ad. 433; *Crampton* v. *Admr. of Ballard*, 10 Vt. 251; *Pangborn* v. *Saxton*, 11 Vt. 79; *Hall* v. *Huntoon*, 17 Vt. 244; *Corey* v. *Powers and Tr.* 18 Vt. 587; *Phelps et als.* v. *Conant et al.* 30 Vt. 277.

But the defendant has broken no contract in which the plaintiff has any interest. No contract is claimed to exist with, or for the benefit of, the plaintiff, except such as is created by the by-laws of 1860 or of 1866; and the contract is claimed to exist solely by virtue of the existence of those codes of by-laws. Now the contract,

if the by-laws create any, was not an absolute one to pay the widows of members 25 cents per day during life, but a conditional one to pay that sum for that time, provided the by-laws remained unaltered in that respect. The very by-laws, one article of which provides that the widow shall receive such an allowance during life, in another article expressly provide that the by-laws may be altered, and how such alteration may be accomplished. The charter itself provides for altering, amending, and repealing the by-laws. While the by-laws remained unaltered, the obligation, if it was a legal one, to pay the widow, remained the same; but with the alteration of the by-laws, the obligation changed accordingly.

The most the plaintiff can claim with any show of plausibility is, that she is entitled to be paid at the rate of twenty-five cents per day, after the alteration of the by-laws, until the aggregate of such payments, counting only from the 4th of August, 1869, amounted to $200. Upon this theory the plaintiff would be entitled to recover considerably less than upon the doctrine that the defendants are bound to pay her twenty-five cents a day so long as she remains a widow. Thus, if the alteration of the by-laws in 1869 has no effect upon the plaintiff's rights, she is entitled to recover twenty-five cents per day from January 5th, 1869, the date of her husband's death, to May 20th, 1872, the date of the commencement of this action, less the two hundred dollars she has received.

The opinion of the court was delivered by

REDFIELD, J. The declaration counts upon a promise made to the deceased husband of the plaintiff, and upon a consideration moving from him, that defendant would pay to the wife a certain daily stipend in case of the husband's decease. At the time the husband became a member, the society was a voluntary association, formed under certain by-laws and articles of agreement. Before his death the society was incorporated by act of the legislature. Both the articles of association and the act of incorporation provided for altering and amending the by-laws.

I. It is insisted that the plaintiff cannot maintain this suit; that, the contract having been made with the husband, and the

Fugure v. Mutual Society of St. Joseph.

consideration moving from him, the suit can only be maintained in his name or that of his legal representatives. Upon such declaration and proof as this case discloses, we think the decisions in this state have been uniform that, at law, the plaintiff cannot recover.. The consideration moved from the husband, and the promise was made to him; and hence he alone, or his legal representatives, can sue at law, to enforce the promise. *Crampton* v. *Ballard*, 10 Vt. 251 ; *Pangborn* v. *Saxton*, 11 Vt. 79 ; *Hall* v. *Huntoon*, 17 Vt. 244; *Corey* v. *Powers*, 18 Vt. 587.

In some of the states a different doctrine has obtained, and cases, are cited from New York that would support the right of action in the plaintiff; but the course of decisions in England seems in concurrence with the uniform rule in this state.

In *Price* v. *Easton*, 4 B. & Ad. 433, the declaration was quite the same as the one before us. PATTERSON, J., interrupted the counsel for plaintiff, and said : " *No promise to the plaintiff* is alleged, but merely a promise *to pay* the plaintiff." And Lord DENMAN, Ch. J., stopped the solicitor general in the defence, and said : " I think the declaration cannot be supported, as it does not show any consideration for the promise moving from the plaintiff to the defendant; " and in this opinion all the judges concurred. Some members of this court think that this declaration might be so modified as to enable the plaintiff to recover. If this were so, there is another ground of defence which, we think, must prevail; and hence, any amendment would be unavailing to the plaintiff.

II.   At the time the husband became a member of the society in 1862, the by-laws provided that each member paying the regular assessment, should " be entitled to twenty-five cents per day during their sickness ; " and " to the widow of each member deceased, so long as she shall remain a widow, and shall enjoy a good reputation, twenty-five cents per day." It was further provided that, " so long as there shall be twenty dollars in the treasury, the society cannot reduce its aid to the sick." There is, also, a special provision for the manner of altering or changing the by-laws; and there is, also, a provision in the charter that the society may alter or change its by-laws. In August, 1869, the defendant corporation adopted a set of by-laws which provided that

48

such widows shall receive twenty-five cents per day " until she had received $200." The plaintiff has received $200, in accordance with the latter by-law of the society. It is insisted that a right had become *vested* in the plaintiff to have and receive of the defendant twenty-five cents per day during her widowhood; and that it was not competent for the defendant to deny or diminish it.

The means of making these contributions to the sick, and the widows of deceased members, were derived solely from voluntary assessments upon the members of the society, and must be graduated by such assessments. And experience might prove that, without assessments greater than the members could bear, there must be a limitation to the stipend to widows. Prevailing sickness among the members may have so exhausted the means of the society, that the provision for widows must, necessarily, be modified, or it could not discharge the duties for which it was formed.

It must be incident to the very nature and purpose of such an association, that it should have power to modify and change its by-laws so as to graduate its charities as experience and necessity may require. It cannot, indeed, pervert its contributions to subserve other ends and purposes; but the society may regulate the manner in which they shall carry out the purposes for which they associated. They provided that care for the sick should not be suspended or abridged while $20 remained in the treasury; thus, by necessary implication, conceding that other provisions might be made. Some sweeping disease might so exhaust the resources of the society, that stipends to widows in health must necessarily be suspended or much abridged; and this could be regulated only by practice and experience. The regulation limiting the widow's share in this charity to $200, was made by a general law, and applicable to all; and there is no suggestion of fraud, or that the regulation was not wise and salutary. We think the society were competent to make this by-law; and, having fully performed the duty imposed, the plaintiff cannot recover.

But in this case there was an express provision in the constitution of this society, that the by-laws might be changed, and the manner of doing it was specifically pointed out; so that the husband voluntarily became party in an association, and contributed

his money with full knowledge of all the provisions in the articles of association, and fully assented to the same. There is no good reason, therefore, for claiming that the widow had a vested right which the society could not modify.

The judgment of the county court is affirmed.