No. 14,569.

THE SUPREME LODGE, KNIGHTS OF PYTHIAS, *v.* KNIGHT.

BENEFIT SOCIETY.—*Contingent Liability.*—*Payment out of Specific Fund.*— Where a benefit certificate issued by a benevolent order contains an agreement to pay the beneficiary two thousand dollars, with a proviso that if there shall be less than two thousand members in the class to which the assured belongs, then only a sum equal to one dollar for each member shall be paid, the amount recoverable by the beneficiary is contingent upon the number of members in the class, and is confined to the specific fund.

SAME.—*Number of Persons in Class.*—*Burden of Showing.*—In an action upon the certificate the beneficiary need not allege in the complaint that at the time the assured died there were two thousand members of the particular class, but if there were less than that number the burden is upon the defendant to show the fact.

SAME.—*Charter and By-Laws.*—*Constitution Merely a By-Law.*—The constitution adopted by a voluntary association or a corporation is not a charter, but only a by-law under an inappropriate name, and the association or corporation can alter or abrogate it, unless prohibited by some higher rule; hence a conflict between constitution and by-law is merely a conflict between by-laws.

SAME.—*Contract of Insurance.*—*Elements of.*—The provisions of the charter and established by-laws of a benefit association are elements of contracts of insurance between the association and its members.

SAME.—*Vested Right.*—While both the assured and the beneficiary have a right which is in its nature a vested one, it is not an unqualified vested right, but is subject to the limitations and conditions of the charter and by-laws, which are factors of the contract.

SAME.—*Notice of By-Laws.*—*Amendment.*—A member of a benefit association must take notice of all by-laws which affect his rights or interests, and where there is an express reservation of the right to amend he is bound to take notice of the existence and effect of such reserved power.

SAME.—*Power to Enact By-Laws.*—*Discretion.*—*Judicial Interference.*—The power to enact by-laws is an inherent and continuous one; the duly authorized representatives of the members are alone vested with the power of determining when a change is demanded, and the courts will interfere only when there is an abuse of discretion.

SAME.—*Depletion of Class.*—*Liability of Society.*—A change by a benevolent order, in good faith, under a reserved power of amendment, of its system of insurance, whereby the number of persons in a certain class is re-

duced by the creation of another class giving insurance upon more favorable terms to persons under a certain age, and permitting certificate holders to become members of the new class, thus cutting down the amount which will be realized by a beneficiary by an assessment upon the members of the old class, is not such a wrongful act or breach of contract as renders the association liable to the beneficiary beyond the amount which will be so realized; but even if the depletion of the class mentioned constituted a breach of contract, the damages are too remote and conjectural to form the basis of a recovery.

From the Clay Circuit Court.

*S. P. Oyler, W. A. Johnson, E. S. Holliday* and *G. A. Byrd,* for appellant.

*D. E. Williamson, A. Daggy, G. A. Knight* and *A. W. Knight,* for appellee.

ELLIOTT, C. J.—The first paragraph of the appellee's complaint counts upon a certificate of insurance taken out in the order of the Knights of Pythias, and naming the appellee as the beneficiary. The certificate contains an agreement to pay the appellee the sum of two thousand dollars upon the death of the assured, but this agreement is subject to the condition thus expressed : " *Provided, however,* That if, at the time of the death of said Brother Edward S. Hussey, there shall be less than two thousand members in this class, there shall only be paid a sum equal to one dollar for each member in good standing in this class."

The effect of this stipulation is to confine the beneficiary to a specific fund. This fund is such as is yielded by the assessments laid upon the members of the class of which the assured was a member. There is no general, unconditional agreement to pay two thousand dollars, for the amount the order undertakes to pay is contingent upon the number of the members of the class to which the assured belonged. The contract is not the less one of insurance because made by a voluntary association or benevolent order, for the consideration was a valuable one, and was yielded in return for the agreement of the order to pay the beneficiary the desig-

nated sum upon the death of the assured, but, nevertheless, it is not a general contract to pay a stipulated sum unconditionally. *Presbyterian Mutual Assurance Fund* v. *Allen,* 106 Ind. 593.

The policy only entitled the beneficiary to a sum equal to one dollar for each member of the class at the time of the death of the assured, but it does not follow from this that the beneficiary was bound to aver that there were two thousand members of the class at the time the assured died. The number of members was a matter peculiarly within the knowledge of the defendant, and the plaintiff was not bound to allege facts peculiarly known to it, and of which she could have little, if any, knowledge. *Elkhart Mutual Aid, etc., Ass'n* v. *Houghton,* 103 Ind. 286 ; *Lueder* v. *Hartford, etc., Ins. Co.,* 12 Fed. Rep. 465; *Supreme Council* v. *Anderson,* 61 Texas, 296.

The plaintiff, in such an action as this, makes a *prima facie* case, entitling him to recover the sum named in his certificate, when he pleads the certificate, performance on his part and that of the assured, death of the assured, and failure of performance on the part of the insurer.

The third paragraph of the complaint presents a radically different question from that presented by the first, for it proceeds upon the theory that the governing body of the order, by establishing a new class, and offering more advantageous terms to members of the order who would enter it, so depleted the class to which the assured belonged as to reduce the value of the certificate to one hundred and seventy-three dollars, and that, for this reason the appellee is entitled to recover the difference between the value of the policy represented by the members that remained in the class and the maximum sum named in the certificate.

The paragraph under immediate mention alleges that the defendant is a foreign corporation, organized for benevolent purposes ; that it established an endowment rank for the purpose of securing benefits to the members, and that in the year

1877 the endowment rank consisted of two classes, the first and the second; that at that time there was in force these provisions of the constitution of the corporation : " No person shall be eligible for membership in this rank unless he be a Knight of Pythias, in good standing in his lodge, and not over fifty years of age, provided that, until June 1st, 1878, all members of the Knights of Pythias may become members of the endowment rank, without regard to age; that when there are less than two thousand members in the second class, the benefit accruing therefrom shall be one dollar from each and every member thereof;" that, in the month of October, 1877, the father of the plaintiff became a member of the order, and of the second class of the endowment rank, as it then existed; that he received a certificate in which the plaintiff was designated as the beneficiary; that, at the time the plaintiff's father became a member, the provisions of the constitution quoted were in force, and the order possessed the right and the power to raise the sum named in the certificate by an assessment upon the members of the second class of the endowment rank; that within six months after the endowment rank was established the second class contained more than two thousand members, and that the members increased until they finally reached sixteen thousand; that, in May, 1884, at a session of its Supreme Lodge, the order changed its constitution and by-laws so that a fourth, or graded, class was created; that this was done without the knowledge or consent of the insured and the plaintiff; that, because of this change, and through the extraordinary efforts and inducements of the order, members of the second class under the age of sixty years were induced to leave the second class and enter the fourth ; that, in that class, the members were required to pay a definite sum upon each one thousand dollars of insurance, based upon the American tables of life expectancy, instead of one dollar for each death ; that the officers of the order represented to the members of the classes first established, who were under sixty years of age,

that premiums would be less burdensome in the fourth class than the death rate under the assessment plan, and they were, and are, less burdensome to persons under that age ; that the constitution and by-laws, as amended, allowed members one year's time in which to change from the first established classes to the fourth, or graded, class; that the year thus fixed expired in May, 1885 ; that, for the purpose of still further depleting the old classes, the time was extended until the 24th day of October, 1885, and it was ordered that no transfer to the fourth class should be permitted after that date ; that neither the assured nor the plaintiff had any notice of the change until November, 1886 ; that immediately upon receiving notice of the change they notified the defendant that they protested against it ; that by reason of the change the class to which the assured belonged was reduced to one hundred and seventy-three members ; that the plan framed by the change largely increased the cost of insurance to persons over sixty years of age ; that the act of the order in making the change was in violation of its constitution; that all assessments have been paid since the time the certificate of membership was issued, in November, 1877; that the plaintiff has paid, in addition to assessments, the sum of two dollars each year for nine years, and that the total amount paid by her is two hundred and forty dollars.  The complaint also contains the proper allegations as to the death of the assured and the filing of the necessary proofs.  The certificate incorporated in this paragraph contains, among others, the provisions which we have quoted.

The third paragraph of the appellant's answer is addressed to the paragraph of the complaint of which we have given a synopsis, and its contents may be thus summarized : It admits the allegations of the complaint as to the contract, the payment of assessments and the like, avers that there were only one hundred and seventy-three members of the class to which the assured belonged, and admits that the sum of one hundred and seventy-three dollars is due the plaintiff.  It avers

that the constitution and by-laws were changed by the representatives of the members of the order so as to create a fourth, or graded, class, and that these amendments were made at a regular session of the governing body of the fraternity. It sets forth at length the constitution and by-laws of the order, and in them the general plan of the order is exhibited, its objects set forth and the relations of the members to the order shown, and in them also is contained a reservation of the right and power to change or amend the constitution and by-laws of the association. It alleges that the amendments were made in conformity to the constitution and by-laws, and in good faith, and for the best interests of the order. It also appears that the system of insurance was changed by the amendments made in May, 1884, from the arbitrary assessment plan to that of the payment of premiums, graduated according to the age of the members.

The appellee's counsel have constructed a very ingenious and plausible theory, but it is not strong enough to bear the test of the law. The assumption upon which it rests is, that the appellant has invaded a legal right of the appellee, and as this assumption can not be made good, the theory must fall. An invasion of a legal right constitutes an actionable wrong. But there can be no actionable wrong unless there is a breach of contract or a tortious act. Nor is it in every case where there is a wrong that actual damages can be recovered, since damages that are purely speculative or conjectural are not recoverable. There must also be some connection between the act complained of and the injury alleged as the resulting one. These familiar principles constitute the groundwork of our discussion.

In such a case as the present, the only wrong that could give the claim of the plaintiff the complexion of a tort would be one in its nature fraudulent, for, without some element of fraud, such a claim as that here urged must be ranked as a claim belonging to the class *ex contractu,* and not to the class *ex delicto.* It is quite clear that there was nothing of a fraud-

ulent or dishonest nature in the act of the appellant. There was neither actual nor constructive fraud. The change in the by-laws was made in conformity to the original laws of the order; there was no bad faith; there was, on the contrary, a purpose to advance the interests of the order, and the means chosen to effect that purpose were not founded on a mere arbitrary exercise of power, for very substantial and very good reasons support the action of the order in changing the system of insurance. All things indicate good faith and an honest purpose. But if this were not so, the presumption of good faith rises to do the appellant service.

If, therefore, the appellee has a valid claim for more than the amount of one hundred and seventy-three dollars, it must rest upon an actionable breach of contract, and not upon a tortious act. The only plausible portion of the appellee's argument is that which rests upon the assumption that there was a breach of contract, and unless this assumption is maintainable the ground falls away from her position.

There is a fallacy pervading the appellee's argument which it is well enough to notice before going directly to the question of whether there was an actionable breach of contract. The fallacy to which we refer is the assumption that the constitution of the order is its charter. This is an error. Charters are not created by the act of the corporation or association, but are granted by the sovereign power of the State. A constitution of a voluntary association or a corporation is nothing more than a by-law under an inappropriate name. The power that can enact a by-law, whether called a constitution or not, can alter or abrogate it, unless some higher rule restrains or prohibits a change or repeal. When the authorities speak of a charter they mean an essentially different thing from a law or constitution of the association's own creation. The change in the by-laws of the association can not, therefore, be held to have been made in violation of its charter, hence the appellee's counsel are in error in asserting that there is a conflict between the amended

by-laws and the charter. The by-laws, are before us, but the charter is not, for it is not pleaded. What counsel call a charter is nothing more than a code of laws, established, not by the sovereign power of the government, but by the creature of that power, the corporation or association. The most that can be justly said is, that the later by-laws are in conflict with the earlier. There is, therefore, no clashing between corporate utterances and charter provisions. Authorities and arguments based upon the hypothesis that the later by-laws contravene the provisions of the corporate charter are entirely without force or relevancy.

The provisions of the established by-laws of an association such as that with which the assured united, are, as appellee's counsel justly affirm, elements of the contract of insurance. They are factors that can not be disregarded. That they have this effect all who become members of the association must know. A person who enters an association must acquaint himself with its laws, for they contribute to the admeasurement of his rights, his duties and his liabilities. *Bauer* v. *Samson Lodge,* 102 Ind. 262; *Fugure* v. *Mutual Society, etc.,* 46 Vt. 362; *Simeral* v. *Dubuque M. F. Ins. Co.,* 18 Iowa, 319; *Coles* v. *Iowa, etc., Ins. Co.,* 18 Iowa, 425; *Coleman* v. *Knights of Honor,* 18 Mo. App. 189; *Mitchell* v. *Lycoming Mut. Ins. Co.,* 51 Penn. St. 402; *Burton* v. *St. George's Society,* 28 Mich. 261; *Osceola Tribe* v. *Schmidt,* 57 Md. 98; *Sperry's Appeal,* 116 Pa. St. 391; Bacon Benefit Societies, section 81. It is not one by-law or some by-laws of which the member must take notice, for he must take notice of all which affect his rights or interests. *Poultney* v. *Bachman,* 31 Hun, 49. Where, as here, there is an express and clear reservation of the right to amend he is bound to take notice of the existence and effect of that reserved power.

The power to enact by-laws is inherent in every corporation as an incident of its existence. This power is a continuous one. Niblack Mut. Ben. Soc., section 124. No one

has a right to presume that by-laws will remain unchanged. Associations and corporations have a right to change their by-laws when the welfare of the corporation or association requires it, and it is not forbidden by the organic law. The power which enacts may alter or repeal. *Richardson* v. *Society*, 58 N. H. 187; *Commonwealth* v. *Mayor*, 5 Watts, 152; *St Patrick's Society* v. *McVey*, 92 Pa. St. 510.

The duly chosen and authorized representatives of the members alone are vested with the power of determining when a change is demanded, and with their discretion courts can not interfere. Were it otherwise, courts would control all benevolent associations, all corporations, and all fraternities. It is only when there is an abuse of discretion and a clear, unreasonable and arbitrary invasion of private rights that courts will assume jurisdiction over such societies or corporations. With questions of policy, doctrine, or discipline, courts will not interfere. Courts will compel adherence to the charter and to the purpose for which the society was organized, but they will not do more. *Stadler* v. *District Grand Lodge, etc.*, 3 Am. Law Rec. 589; *Crossman* v. *Massachusetts Ben. Ass'n*, 143 Mass. 435; *Hussey* v. *Gallagher*, 61 Ga. 86.

The principle which rules here is strictly analogous to those which prevail in controversies between the officers and members of religious organizations, and it is well settled that, in such cases, courts will not control the exercise of discretionary powers, or direct the course of action in matters of expediency or polity. *Dwenger* v. *Geary*, 113 Ind. 106.

To justify interference by the courts and warrant the overthrow of by-laws enacted in the mode prescribed by the by-laws, it must be shown that there was an abuse of power, or that the later by-law is unreasonable. It is not enough to show that a better or wiser course might have been pursued, for it must be shown that there was an abuse of discretion, or that the by-law is so unreasonable as to be void. We do not affirm that a benefit society may, by a change in

its by-laws, arbitrarily repudiate an obligation created by a policy of insurance, but we do affirm that, where a change is regularly made in its by-laws, and the motive which influences the change is an honest one to promote the welfare of the society, and the members are all given an opportunity to avail themselves of the change, no actionable wrong is done the members or their beneficiaries. It may sometimes happen that the interests of one individual, or of a few individuals, may be impaired, but .it is the right, and, indeed,. it is the duty, of the society to protect the interests of the many rather than of the few. Persons who become members of such societies must take notice of this, and one person can not, therefore, demand that the welfare of the society and the interests of the many be sacrificed for his sole benefit.

In the case before us the change from the one plan to the other was not an arbitrary or unreasonable exercise of power, nor was it the repudiation of a debt, nor the destruction of a vested right. It was not unreasonable, because it may well be that the system of insurance originally adopted, which gave no heed to age, was so infirm as to be incapable of long enduring; it was not arbitrary, because the by-laws reserved the right of amendment, and a desire to promote the welfare of the society brought about the change; it was not the repudiation of a debt, because the right to the avails of assessments provided for by the contract was not taken away; it was not the destruction of a vested right, because the power to amend was, as reserved, a part of the contract from which the right of the beneficiary emanated, and because, also, the right to enter the new class was open to all members on equal terms.

There was a classification, it is true, according to age, but there was no inequality, because, as all men know, it is no more than just to require one whose life expectancy is brief to pay a higher rate than one whose age gives him, in the usual course of nature, a longer lease of life.

It is to be constantly kept in mind that the contract does

not bind the society to pay a designated sum absolutely and at all events, but, on the contrary, the contract, by its express terms, limits the beneficiary to a specific fund derived from assessments. The right of the beneficiary, as fixed by the contract, is to receive the avails of the assessments. Bacon Benefit Societies, section 453.

There is no general fund from which a loss can be paid. All the money available for the payment of losses is derived from the assessment of the members of the class in which the loss occurs. It is, therefore, not legally possible for a beneficiary in one class to compel payment out of funds derived from premiums or assessments paid by the members of another class. Each class contributes to its own losses, but not to losses in other classes. Of this members and beneficiaries are bound to take notice, and they can not, therefore, demand that funds belonging to another class shall be diverted for their benefit.

Beneficiaries acquire their rights through the members. It is possible that in some exceptional particulars they may have rights which the members do not possess; but, in a case like this, where their contract restricts them to a specific fund, they certainly have no right to demand payment out of a fund belonging to another class. Their right to payment is confined to the fund designated by their contract, and they can not, with justice, demand that other funds shall be appropriated to the payment of their claim. It is enough for us to affirm this proposition, and that we may safely do, both upon principle and authority, without attempting to define what greater rights, if any, the beneficiary has than those of the assured.

We do not doubt that both the assured and the beneficiary have a right that is in its nature a vested one, but it is not an unqualified vested right; on the contrary, it is qualified and limited in a great degree. It is a right subject to the limitations, conditions and restrictions of the charter and the by-laws, which are factors of the contract. *Masonic Mutual*

*Benefit Society* v. *Burkhart*, 110 Ind. 189; *Presbyterian Mutual Assurance Fund* v. *Allen, supra.*

Whatever the nature of the right, it is only such as the contract creates, no matter who becomes the party beneficially interested. The contract, with its limitations and conditions, is the primary source of the right to recover. *Supreme Commandery* v. *Ainsworth,* 71 Ala. 436; *Byrne* v. *Casey,* 70 Tex. 247.

As the contract, by force of the reservation in the by-laws, provides for a change in the by-laws, that right exists as against the beneficiary, as well as against the assured. The right, even if it were conceded to be a vested one in the strictest sense, would, in the hands of the beneficiary, or an assignee, be subject to the provision that changes in the by-laws may be made in the prescribed mode, since the contract is the source from which all rights flow.

There remains one other question, suggested in the early part of this opinion, and that is this: could the plaintiff recover more than nominal damages for the depletion of the class to which the assured belonged, even if it were conceded that the change constituted a breach of the contract? There can be, it seems clear to us, only one answer to this question, and that is, the damages are too remote, conjectural and speculative to form the basis of a legal recovery. The result that would have followed had not the system been changed is a mere matter of speculation and conjecture. It can not be said that if no change had been made there would have been no reduction in the number of the class. If the system originally adopted was not one (and this the facts stated make very probable) that would maintain itself, then the appellee would have been much worse off than she is now. Whether it could have endured can only be conjectured. The damages are both conjectural and remote. There is no connection between the change in the system and the depletion of the class of which Hussey was a member that can be legally said to be proximate and natural.

The court erred in sustaining the demurrer to the third paragraph of the answer; but as the special finding shows that the appellee was, and is, entitled to a judgment for one hundred and seventy-three dollars, she will be allowed, if she so elects, to enter a remittitur for the proper amount within ten days, and in the event that she does enter a remittitur, the judgment will be affirmed; otherwise the judgment will be reversed, with instructions to overrule the demurrer to the third paragraph of the answer, and to proceed in accordance with this opinion.

