PHILIP C. FUNK ET AL., APPELLANTS, v. JOHN STEVENS
ET AL., APPELLEES.

FILED OCTOBER 5, 1918.    No. 20328.

1. Insurance: INCREASE IN RATES.  A member of a mutual benefit so-
ciety cannot complain of an increase of rates necessary to enable
the society to comply with its contract.

2. ———: MUTUAL ASSOCIATIONS: OBLIGATIONS OF. MEMBERS.  The
mutual promise of every member of such society is to pay the
certificate of every other member.  There is no vested right in
any provision of the contract, either express or implied, that is
not subject to and controlled by the duty of the member to pay
the cost of his own insurance, for, under no construction of a
mutual contract, can he demand more than he is willing to give.

3. ———: ———: BY-LAWS.  The power to enact by-laws is an in-
herent and continuous one.  The duly· authorized representatives
of the members are alone vested with the power of determining
when a change is demanded, and the courts will interfere only
when there is an abuse of discretion.

4. ———: ———: CHANGE IN ASSESSMENTS.  A change in assessments.
so as to make them conform to the cost of insurance according
to age, made in conformity to the law of experience in such mat-
ters, is a reasonable change.  It is not the fixing of an arbitrary
age or class distinction.

APPEAL from the district court for Lancaster county:
WILLARD E. STEWART, JUDGE.  *Affirmed.*

*J. C. McReynolds, J. L. McPheely, W. P. Hall* and
*C. W. Meeker,* for appellants.

*John Stevens, Edward J. Lambe* and *Edward F.
Leary, contra.*

CORNISH, J.

The Ancient Order of United Workmen, a fraternal
life insurance company, originally fixed assessments at
$1 each on death of a member, regardless of age.  The
plan in this particular was improvidential, unscientific.
The average age of members increases.  Twice in its

history during the plaintiffs' membership, and before the change in rates of assessment, which is the subject of this controversy, it became apparent to the membership that the organization could not survive under the old rates. Accordingly, changes in rates of assessment were made more in consonance with the necessities of the case, making the rate correspond more nearly to the risk carried as affected by the member's age, which changes were acquiesced in by the members, including the plaintiffs.

But still it was found that a sufficient increase in rates, adjusting them according to age, had not been made if the obligations of the order were to be kept. The directors rightfully called a session of the grand lodge, which amended the law fixing assessments as the law now reads. Afterwards, at the regular meeting of the grand lodge, a majority voted to repeal the previous law as amended. Later the body voted to reconsider this action. A motion to table was lost and a motion to finally adjourn carried. This situation left the law as adopted at the earlier meeting in force, whether or not its repeal required a two-thirds vote, unless it is invalid for other reasons.

The objection made to it by plaintiffs is that it fixes the assessment on an aged member so high as to make it unprofitable, and might, in instances, make it financially impossible for him to remain a member. If past 60 years old, he has to pay $11.20 a month on a $2,000 policy. The increase on older members was, in the earlier increases above mentioned, in greater proportion than that on younger members. Is this permissible? The laws of the order have always fixed the rate and contained a provision for their amendment. The member's certificate left the order's obligation subject to these amendments. By acquiescing in the previous amendments, the plaintiffs agreed that the contract permitted a burden increasing with age.

Courts will not undertake to direct or control the internal policy of such societies. It is only when there is an abuse of their discretionary powers—an unreasonable and arbitrary invasion of private rights—that the courts interfere.

Now, if there is any obligation of the society more binding upon it or its members than another, it is the promise made in the statement of the objects of the order to pay each member's beneficiary $2,000 upon his death. In morals and in law that promise must, if possible, be kept. The member must not forget that he is an insurer as well as an insured. When the order is faced by inevitable financial ruin for want of funds impossible to be raised under the existing rule of assessment, no member can disassociate his certificate or contract and insist that the object of the fraternity is to pay him in full without reference to his fellow members. To increase the number of assessments, or, which is the same thing, to increase assessments proportionate to amount being paid, does not at all reach the difficulty. The original assessments were unscientific and, in fact, inequitable. The members did not appreciate how the average age and cost of insurance would increase, and the infusion of new blood would not prevent it. In its appeal to the young man, even fraternal objects must be just as well as generous. The scheme contemplated continuous additions as old members died. If ten men mutually promise to pay each other $10,000 at death, the $10,000 must be gathered from the promisors if all are to be paid.

Under such circumstances, in order to keep the pact to prevent the deficit and meet the obligation, what proposition could be more equitable than this: Henceforth each member shall pay according to the cost of his insurance to the society and the value of it to him? This is the proportion which should not be violated—each pay in proportion to what he is

getting. This is what the National Fraternal Congress rates, based upon actual experience, and adopted by the society, attempts to accomplish. Shall we say that the society ever undertook to insure its members at less than cost? The plaintiff Hallgren joined when 39 years old and has been a member for 25 years. He has had his insurance for 82 cents per month per thousand. This has not been a bad bargain and is not much, if any, above cost of insurance. The same is true of the other plaintiff. Can they complain, even though it is true, that when they joined they paid slightly more than cost? If advancing age increases cost of insurance, justice requires this fact to be considered.

But, say the plaintiffs, if this is so, then we and others have been grossly deceived. Such extreme rates were never contemplated in the early days of the order. The answer is that this may be true. It was a common blunder. The plaintiffs were deceivers as well as deceived, and, so long as the rate of increase is necessary and reasonable and proportionate, the young and the old members contributing according to the risk assumed in carrying each, without arbitrary discrimination, they ought not to make this fact an excuse for taking an attitude which must bring ruin to the order and prevent its meeting its obligations.

If following the rule that each member must pay from year to year according to his age and risk results (as it probably will) in making fraternal insurance less desirable as old-age insurance, it leaves it what has always been its chief attraction—the more desirable as young men's insurance. The young man, possibly with wife and little children, the calamity of whose death is greatest of all, will still be able to get his insurance at cost, or nearly so, during the youthful period of his life when the cost is trifling compared to what it is in old age. This view, we believe, is in accordance with the

prevailing opinion of the courts. *Farmers Mutual Ins. Co. v. Kinney*, 64 Neb. 808; *Fisher v. Donovan*, 57 Neb. 361; *Thomas v. Knights of Maccabees of the World*, 85 Wash. 665, L. R. A. 1916A, 750, and note; *Supreme Lodge, K. P., v. Knight*, 117 Ind. 489; *Supreme Lodge, K. H. v. Bieler*, 58 Ind. App. 550; *Reynolds v. Supreme Council, Royal Arcanum*, 192 Mass. 150; *Uhl v. Life & Annuity Ass'n*, 97 Kan. 422; *Clarkson v. Supreme Lodge, K. P.*, 99 S. Car. 134; *Strauss v. Mutual Reserve Fund Life Ass'n*, 126 N. Car. 971, 83 Am St. Rep. 699, and note.

The plaintiffs rely somewhat upon the decisions in *Tusant v. Grand Lodge, A. O. U. W.*, 163 N. W. (Ia.) 690, and *Wagner v. Supreme Lodge, Knights of Pythias*, 116 N. E. (Ind. App.) 91. In the *Tusant* case the older members were, as that court held, arbitrarily placed in a distinct class and denied the benefit of the insurance carried by other members. Here also the order undertook to reduce the amount of insurance that should be paid to the beneficiary of the owner, so that, for instance, at the age of 70 years the beneficiary would receive only $366 on a $1,000 certificate. The court held that the member had a vested right in the amount of his certificate. In the *Wagner* case the organization undertook to make the aged members pay an increased amount for the cost and expenses of investigating and adjusting death claims, so that, while at the age of 21 years this charge would be only $3.03, at the age of 82 it was $18.17. This, it would seem, was an altogether arbitrary discrimination against the aged member. In the instant case no such attempt is made to classify or penalize according to age.

AFFIRMED.

MORRISSEY, C. J., not sitting.

SEDGWICK, J., dissenting.

That "a member of a mutual benefit society cannot complain of an increase of rates necessary to enable the

society to comply with its contract" is a little too strong. This paragraph of the syllabus is the key to the whole opinion. No burden put upon a member or a class of members is too great or too inequitable if it is "necessary to enable the society to comply with its contract." If, as stated in the syllabus, "the mutual promise of every member of such society is to pay the certificate of every other member," and in the opinion, "it became apparent to the membership that the organization could not survive under the old rates," they should have some provision in their agreement by which each member should be bound to do his share to make up the deficiency. This they had. Their by-laws provided: "Whenever the amount in the beneficiary fund uninvested, after providing for all reported death losses, shall be less than $4,000, and the finance committee shall by resolution declare it expedient and advisable to levy an additional assessment upon the members, it shall be the duty of the grand recorder to call an additional or second assessment for the next month, upon all of the members, notice of which shall be given as provided in section 159, and shall be paid by the members as in these laws provided." Section 158, Laws of the Grand Lodge of A. O. U. W. 1915. This they could have done, and by amending their rates as to new members they would have avoided all danger of insolvency. But, acting upon the principle announced in the syllabus of the present opinion, they concluded that no member could complain of any "increase of rates necessary to enable the society to comply with its contract." They could by a vote say to any member: "You put up enough to enable us to comply with our contracts or we will cancel your policy." They changed their mutual agreement so that a certain class of their members should pay a larger proportion of this deficiency than their agreement provided. And they were very generous in not putting this burden on one

or two members. They put it upon all those over 60 years of age. This they could do because the necessary two-thirds to so act were much under that age and would not be burdened, but directly benefited, by their action.

The cases cited in the opinion will not justify such a rule. The true rule is that the rates should be arranged so that new members of whatever age should pay in proportion to the benefits received by them and sufficient to enable a compliance with their mutual agreements as to such new members. But existing members should all pay their agreed proportionate share to make good any deficiency arising from their mutual mistake. They should have levied additional assessments on all existing members in proportions specified in their contracts to enable them to carry out their mutual promises. This above-quoted provision of their laws required that, as well as the ordinary law of contracts and natural justice. The power to "adopt by-laws for the regulation of the business of the grand lodge, * * * not in conflict with the provisions of these laws," comes very far short of enabling them to change the contract existing between themselves as to bearing the common burdens which they mutually assumed. To put a larger and disproportionate portion of the common burden which they had mutually contracted upon the minority because the majority had a direct pecuniary interest in so doing was "in conflict with the provisions of these laws," which provided for levying additional assessments on all of the existing membership to make up the deficiency.

The decisions of respectable courts generally are that the power to make laws for the government of the society does not include power to change the contract right among the existing members.