## Quinn v. Kenton & Campbell Benevolent Burial Association.

(Decided October 11, 1927.)

### Appeal from Campbell Circuit Court.

1. Insurance.—Insurance commissioner, given the right under Ky. Stats., sections 199a-5, 681c-24, to examine books or affairs of insurance companies and given free access to documents thereof, if he finds they are doing business improperly may inform them what they must do to continue in business.

2. Insurance.—Where member of burial association was, by terms of certificate, subject to association's constitution and by-laws and had no vested right to future insurance which was not paid for, by-laws of association changing rate as to future insurance, by making each member pay according to life expectancy, held not to divest certificate holder of vested right.

3. Appeal and Error.—Motion to dismiss an appeal without prejudice will be denied, where on all facts before the court a final judgment should be rendered and interests of all parties demand that controversy should terminate.

JOHN W. HEUVER and RODNEY G. BRYSON for appellant Mary E. Bryon.

GALVIN & TRACY and FRANK E. DAUGHERTY, Attorney General, for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

The Kenton & Campbell Benevolent Burial Association is a corporation created under section 199a-1, Kentucky Statutes. By its contract it furnishes certain burial facilities in consideration of payments made from time to time by its members. The company has about 50,000 members. It has no assets and no means of meeting its certificates except a mortuary fund created by the contributions of its members. It is a mutual com-

pany. The dues are a certain sum payable monthly, and not contingent upon the death of a member. When a member dies the association furnishes a burial of a specified kind. Its reserve or mortuary fund now amounts to the sum of $140,000, but the insurance commissioner on examining its books found that it was not doing business on the proper basis, although the business had been done honestly and correctly on this basis. The trouble was this: It charged all the members practically the same price without regard to the age of the members. The commissioner found that this method of doing business would necessarily lead to insolvency; for the reason that, the expectancy of life of the older members being less than the younger ones, the older ones would drop out faster than the rates paid by all the members would justify, and he required the company to change its rate and to charge the members at a graduated rate according to the age of each member at the time he entered the association. He notified the company that if it did not do this he would have to refuse it the right to continue business. The company thereupon made a by-law changing the rates to be paid by the members and providing a graduated rate according to the age of the member when he entered the association. The by-law is not retrospective; it only provides what the members must pay in the future, and the payments in the future are regulated by the age of the member when he entered the association. The rates fixed by the by-law are in accord with the practice of the best insurance actuaries, and are conceded to be the rates that the company should have charged in the beginning. The change of rates does not increase the dues of more than half of the members, but it does increase the dues of those members who were older when they entered the association. These members complained, and this suit was filed by Alice Quinn, one of the members, insisting that the company had no right to raise her rate and that under her certificate she was entitled to continue her membership upon the old rate. The action was filed under the declaratory judgment act; the circuit court entered judgment in favor of the burial association on the admitted allegation of its answer. Alice Quinn appeals, and, since the record was filed in this court, Mary E. Bryson, another member who had a similar suit, has filed a brief for the appellant. But there is no dispute about the facts, only a question of law is

raised, and that is whether the old members have a vested right to continue their membership by paying at the old rate. The certificate of Mary E. Bryson, which has been filed here, is in these words:

"No. 26489.                                    Age: 59 yrs.

Weekly Dues: 15 cents.

"CERTIFICATE OF MEMBERSHIP

"The Newport Benevolent Burial Association,
   "Incorporated by the State of Kentucky.

"This certifies that Mary E. Bryson is a member of this association subject to its constitution and by-laws.

"In witness whereof, we, the president and secretary, have caused our names to be affixed thereunto this 13th day of September, 1909.

"JOHN J. PADEL, President,
"JNO. F. CUEHLMANN, Sec."

In Fugure v. Soc. St. Joseph, 46 Vt. 369, Judge Redfield, for the court, thus stated the rule:

"It must be incident to the very nature and purpose of such an association, that it should have power to modify and change its by-laws so as to graduate its charities as experience and necessity may require. It cannot, indeed, pervert its contributions to subserve other ends and purposes; but the society may regulate the manner in which they shall carry out the purposes for which they associated."

In Supreme Lodge v. Knight, 117 Ind. 489, 20 N. E. 479, 3 L. R. A. 409, the Supreme Court of Indiana thus stated the rule:

"The power to enact by-laws is inherent in every corporation as an incident of its existence. This power is a continuous one. . . . No one has a right to presume that by-laws will remain unchanged. Associations and corporations have a right to change their by-laws when the welfare of the corporation or association requires it, and it is not forbidden by the organic law. The power which enacts may alter or repeal. . . . . The duly chosen and authorized representatives of the members alone are

vested with the power of determining when a change is demanded, and with their discretion courts cannot interfere."

The reason for the rule is thus stated in Bacon on Insurance and Benefit, p. 408:

"The fraternal plan, with mutuality and without profit, distinguishes the work of such an association from a commercial enterprise. There being no contract in the commercial sense, but a mutual promise of every member to pay the certificate of every other member, there can be no vested right in any provision of the contract, either express or implied, that is not subject to and controlled by the duty of the member to pay the cost of his own insurance, for under no construction of a mutual contract can he demand more than he is willing to give.

"There is no vested right in having the contract in the certificate remain unchanged, because the recognition of the power to make new by-laws is necessarily a recognition of the right to alter or amend those theretofore made."

Of course the change must not affect vested rights, and, while there is some conflict of authorities on the subject, the court adopts the rule, which is thus stated in Bacon on Insurance and Benefit, p. 420, after a full discussion of the subject:

"We may, however, say that the weight of authority is that in all matters of internal management, those relating to rates, or to conduct of members, laws enacted after the issue of the benefit certificate will be binding on the member, provided no new condition is injected into the contract materially affecting it."

To same effect see 7 C. J. pp. 1079, 1080; Funk v. Stevens, 102 Neb. 681, 169 N. W. 6, 11 A. L. R. 639; Case v. Ben Hur, 106 Neb. 220, 184 N. W. 75, 18 A. L. R. 1172, and notes thereto; Wright v. Minn. Mut. Life Ins. Co., 193 U. S. 665, 24 S. Ct. 549, 48 L. Ed. 832.

Section 199a-5, Kentucky Statutes, gives the insurance commissioner the right to make an examination of the books or affairs of such corporations as is now given

by law to him in the examination of insurance companies
in this state, and section 681c-24 is in these words:

> "The insurance commissioner or any person he
> may appoint shall have the, power of visitation and
> examination into the affairs of any domestic society.
> He may employ assistants for the purpose of such
> examination and he, or any person he may appoint,
> shall have free access to all the books, papers and
> documents that relate to the business of the society
> and may summon and qualify as witnesses under
> oath and examine its officers, agents, and employees
> or other person in relation to the affairs, transac-
> tions and condition of the society."

The purpose of the examination is that the public
shall be protected, and, while the insurance commissioner
is authorized by that section to present the matter to the
Attorney General if he finds the company is not doing
business properly, he is not required to do this, but he
may inform the company what it must do to continue in
business. This the company did here, and the commis-
sioner allowed it to continue in business. It was not the
purpose of the statute to stop a company from doing
business if it could correct and did correct the erroneous
mode of business.

As the plaintiff, by the terms of her certificate, was
a member of the association subject to its constitution
and by-laws, she took subject to the by-laws of the associ-
ation then in force and such subsequent by-laws as the
association was authorized to enact. The association
could not by a subsequent by-law divest any member of
a vested right. It could not therefore make a by-law di-
vesting the plaintiff of the insurance she had acquired a
right to up to the date that she had paid for the insur-
ance under the former by-law. For she had a vested
right to the insurance which she had paid for, but she had
no vested right to future insurance. The by-law chang-
ing the rate as to future insurance simply does justice to
all the members for the future by making each pay ac-
cording to his expectancy of life. The plaintiff has no
right to complain, for she still holds her policy and has
not paid for it for the time past what she should have
paid, and is now only made to pay for the future at the
rate she should have paid on the basis of her age when
she entered the association. If the society had been

wound up each of the members would have received less than $3 from the mortuary fund and they would have lost their insurance. To continue in business on the false basis, even if allowed by the commissioner, would eventually have brought a loss to the surviving members of the association who outlived the period when the mortuary fund was exhausted. And this was sure to come sooner or later as the older members died. The insurance commissioner therefore did right in requiring the rates to be changed and the association did right in complying with his order. For only in this way could justice be done. The association was compelled either to go into dissolution or to change its rates. The latter course was plainly to the interest of the membership as a class.

The motion to dismiss the appeal without prejudice cannot be sustained. Though Mary Bryson had brought a similar suit in the Kenton circuit court before this suit was brought in the Campbell circuit court, as far as the record shows, no final judgment had been rendered in her case, and, the facts being all before the court, a final judgment should be rendered here, for it is to the interest of all the parties that this controversy should be at an end.

Judgment affirmed.