73  321
81  568

73  321
180s 621

# James A. Fullenwider v. Supreme Council of the Royal League et al.

1. FRATERNAL BENEFIT SOCIETIES—*Equality of Members a Fundamental Principal.*—The underlying idea of a fraternal benefit society is that of absolute equality, equality in the burden of providing the funds pro rata to benefits received, and equality of benefits to be received pro rata the burden borne by those contributing to the fund.

2. SAME—*Increasing Assessments by Changing By-Laws.*—Parties forming a fraternal benefit society have power to contract with reference to future by-laws or change of by-laws, and if they do so contract, there is no injustice in enforcing new or changed by-laws against such parties, and there is no limitation that such changes of by-laws shall not be made for the general good of the order even if they increase the burden of some or all the members and increases the assessments.

3. SAME—*May Establish a Reserve Fund.*—A fraternal benefit society has a right to make assessments for a reserve fund if the governing power of the society determines that it is good policy to do so.

4. SAME—*Power of Courts as to Assessments.*—The law does not contemplate that a court shall interpose its judgment as against the honest judgment of the governing body of a fraternal benefit society to determine what is or is not a reasonable rate of assessment. If there is any reason for complaint in that regard it should be made to the state auditor, who is intrusted with a supervisory power over these societies.

5. SAME—*Expenses of—How Paid.*—It is proper, independently of any statutory provision, to pay the expenses of management of a fraternal benefit society out of assessments collected from the members, and no reason is perceived why the governing body may not set aside a certain percentage of the assessments to pay the expenses of the management.

6. SAME—*Injunctions as to Management of.*—A court of equity should use great caution in interfering by injunction with the internal operations or government of purely benevolent or co-operative, voluntary associations. It is also a principal of equity governing the issuing of injunctions, that the court will balance the inconvenience and damage and if it find that the inconvenience and damage resulting to the defendant will be great or excessive if the injunction issues, in comparison with the inconvenience and damage to the complainant if it be refused the court will refuse to issue the injunction.

**Injunction.** Error to the Circuit Court of Cook County; the Hon. MURRAY F. TULEY, Judge, presiding. Heard in this court at the October term, 1897. Affirmed. Opinion filed January 27, 1898.

HAMILTON & FULLENWIDER, attorney for plaintiff in error.

The by-law in force at the time complainant became a member of the Royal League containing the table of rates of assessment and providing that every applicant before becoming a member shall pay to the collector one assessment as fixed by his age, according to said table of rates, for the Widows' and Orphans' Benefit Fund, "and the same amount on each assessment thereafter whilst he is a member of the order," entered into and became a part of the contract of insurance with complainant, and that contract can not be changed without the consent of complainant. Northwestern Benevolent & M. A. Association v. Wanner, 24 Ill. App. 357; Insurance Company v. Connor, 17 Pa. St. (5 Harris) 136; Weiler v. Equitable Loan Union, 92 Hun. (N. Y.) 277; Mutual Endowment Ass'n of Baltimore v. Essender, 59 Md. 463; Margesson v. Mass. Benefit Association, 42 N. E. Rep. 1132; Langdon v. Mass. Benefit Life Association, 44 N. E. Rep. 226; Mulroy v. Knights of Honor, 28 Mo. App. 463; Supreme Council of Am. Leg. of Hon. v. Smith, 45 N. J. Equity, 466; N. Y. Co. Mutual Ins. Co. v. Meyers, 11 Weekly Notes of Cases, 541; Niblack on Benefit Societies (2 Ed.), Sec. 250; Covenant Mut. Ben. Ass'n of Ill. v. Spies, 114 Ill. 463; Morrison v. Wis. Odd F. Mutual Life Ins. Co., 59 Wis. 162; Metropolitan Safety F. Acc. Ass'n v. Windover, 137 Ill. 417; 37 Ill. App. 170; Becker v. Berlin Benefit Society, 144 Pa. St. 232; Gundlach v. Germania Mech. Ass'n 49 How. Pr. 190; Stewart v. Lee Mut. F. Ins. Ass'n, 64 Miss. 499; Hale v. Equitable Aid Union, 168 Pa. St. 377; Pellazzino v. German Cath. St. Jos. Society, 16 Weekly Law Bulletin, Cin., O., 27; Poultney v. Bachman, Treas. I. O. O. F., 62 How. Pr. 466; Kent v. Quicksilver Mining

Co., 78 N. Y. 159; Becker v. Farmer's Mut. F. Ins. Co., 48 Mich. 610.

The contract of insurance with complainant can not be changed as to the amount of each assessment he may be required to pay to the Widows' and Orphans' Benefit Fund, notwithstanding the constitution, by-laws and benefit certificate may provide that the by-laws may be changed, and that said insurance is subject thereto, because such provision for change in the by-laws will be construed if valid at all, to apply only as to future contracts. The following cases (also cited above) have special reference to the provisions for amendments to by-laws. Metropolitan Acc. Ass'n v. Windover, 37 Ill. App. 170; s. c., 137 Ill. 417; Becker v. Farmers Mut. F. Ins. Co., 48 Mich. 610; May on Insurance, Sec. 552, *et seq.*; Northwestern Ben. & M. A. Ass'n v. Wanner, 24 Ill. App. 357; Poultney v. Bachman, 62 How. Pr. 466; Gaundlach v. Germania Treas., 49 How. Pr. 190; Ins. Co. v. Connor, 17 Pa. St. 136; Weiler v. Equit. Aid Union, 92 Hun. 277; York Co. Mutual Ins. Co. v. Mayer, 11 Weekly Notes of Cases, 541; Becker v. Berlin Ben. Society, 144 Pa. St. 232; Hale v. Equit. Aid Union, 168 Pa. St. 377; Pellazzino v. Ger. Cath. St. Jos. Soc., 16 Weekly Law Bul. 27.

The contract of membership in a benefit society is twofold. First. Between all members mutually as members which governs their mutual rights and obligations. Second. That between the members and the association, or the contract of insurance. 3 Am. and Eng. Ency. of Law (2 Ed.), 1080 and note 4 on Contract of Mem.; People v. Women's C. Order of Foresters, 162 Ill. 78; Niblack on Ben. Socs. (2 Ed.), Secs. 6 and 313.

When the insurance feature is paramount in the society, that part of the contract is most important. Mulroy v. Knights of Honor, 28 Mo. App. 463 (471).

The contract of membership includes the constitution, by-laws, the statutes of the State where the society is organized or the contract executed, the application for membership, if any, and the benefit certificate or policy of insurance. 3 Am. and Eng. Ency. of Law (2 Ed.), 1081; Union Mut. Acc. Ass'n v. Frohard, 134 Ill. 228; Protection L. Ins. Co. v. Foote, 79 Ill. 361; Mulroy v. Knights of Honor, 28 Mo. 463; Supreme Council Am. Leg. of Hon. v. Smith, 45 N. J. Eq. 466; Supreme C. of Royal Templars v. Curd, 111 Ill. 284; 30 Law Reps. An., p. 839; Tenn. Lodge v. Ladd, 5 Lea (Tenn.), 720–721; Cath. K. of Am. v. Kuhn, 91 Tenn. 216; Bacon on Socs., Secs. 161 and 185.

The certificate of membership, or policy of insurance, is only the evidence of the formal consummation of the contract between the association and the member, and its language, and that of the application, is to be construed most strongly against the society, the same as any other insurance policy. Union Mut. Acc. Ass'n v. Frohard, 134 Ill. 228; 3 Am. and Eng. Ency. of Law (2 Ed.), 1082, note 5.

If customs or acts of the Supreme Council of the Royal League, or of any other benefit society, place upon the contract of membership or insurance a practical construction, such construction will be given effect by the courts, if not unlawful, and the statement upon the face of its application. "If you are 35 years of age, your rate for $4,000 would be $2.24 each assessment as long as you live," shows the construction which the Royal League put upon the by-law in force at the time complainant became a member, and as the by-law has been the same since the organization of the society in 1883, such construction is conclusive upon it. Brooklyn Ins. Co. v. Dutcher, 95 U. S. 269; Wilcuts v. N. W. Mut. Ins. Co., 81 Ind. 300; State v. Conklin, 34 Wis. 21; 3 Am. and Eng. Ency. of Law (2 Ed.), 1082.

Mere internal regulations may probably be adopted after a member has been received into an order and after his insurance certificate has been issued, so far as such regulations do not change the contract, and the court will construe the language of the benefit certificate, a copy of which is attached to the answer of defendants herein as and also the language of the medical examiner's blank, attached to the answer, so far as the same relates to changes in the laws and regulations of the society, to mean simply such internal regulations as relate to the discipline of members and their social government, and not to mean a right to change the amount of assessment, as provided for in the table of rates.   The assessment being the premium paid by the member upon the contract of insurance.   Northwestern Benevolent & M. A. Ass'n v. Wanner, 24 Ill. App. 361; Georgia M. Mut. L. Ins. Co. v. Gibson, 52 Ga. 640; Leuders Exs. v. Hartford La. Co., 12 Fed. Rep. 465; Covenant Mut. B. Ass'n of Ill. v. Sears, 114 Ill. 108.   People v. Women's Cath. Order of Foresters, 162 Ill. 78; Niblack Ben. Socs., Sec. 25.

The by-laws as amended and sought to be put in force by the defendants, which provides for an increase in the amount of assessment each member shall pay to the said Widows' and Orphans' Benefit Fund, is in violation of the contract of membership and insurance between the defendant, Royal League, and the complainant, and such by-law is therefore invalid. 1 Morawetz Private Corp., Sec. 496; Niblack Ben. Socs., Secs. 41 and 126; Am. and Eng. Ency. of Law (1 Ed.), 173.

In order that an assessment in a benefit society may be legal a necessity for it must exist, and the by-law which provides for such an increased amount of assessment as is unnecessary to pay death benefits, is oppressive, unreasonable, illegal and void.   3 Am. and Eng. Ency. of Law (2 Ed.), 1094, and notes 2 and 3;

Burden v. Mass. S. F. Ass'n, 147 Mass. 360; Rosenberger v. Wash. F. Ins. Co., 87 Pa. St. 207.

The provision in Section 3 of the amended by-law objected to by the complainant, which provides that four per cent of all payments to the Widows' and Orphans' Benefit Fund shall be reserved for expenses, is void, as the charter.and constitution authorizes only assessments to pay death losses and total disabilities. Bersch v. S. Ins. Co., 82 Ind. 64; Niblack on Ben. Socs. (2 Ed.) 476.

Complainant being a member of the order of the Royal League, contributing to its support and interested in its funds, is entitled to maintain this bill. And the provisions of Section 12, of the Act of 1893, concerning fraternal beneficiary societies in Illinois, to the effect that no bill to enjoin a corporation of this character can be maintained, except by the attorney general, have no reference to controversy between individual members and the corporation to prevent acts contrary to the rights of the member. Bastian v. Modern Woodmen, 166 Ill. 595; People v. Women's Cath. Order of Foresters, 162 Ill. 78.

JAMES L. CLARK and KNECHT, BULLARD & ROBLIN, attorneys for defendants in error.

This contract is different in its nature than ordinary contracts in this, that the defendant in error, the Supreme Council of the Royal League, is a fraternal benefit society doing business under a separate and distinct statute limited to societies of this kind and that there is a great distinction between such societies and old line life insurance companies and purely assessment companies doing business without the lodge system. They are neither stock nor exactly mutual companies. While partaking generally of the features of a mutual

company, they could not exactly be described as such in all respects. In the matter of the Equitable Relief Fund Life Ass'n, 131 N. Y. 354.

A provision in the certificate will prevail over a clause in the by-law, no charter restriction being violated. Bacon Mutual Ben. Soc. (2 Ed.), Sec. 161a; Hale v. Equitable Aid Union, 168 Pa. St. 377; Fitzgerald v. Equitable Relief Fund Ass'n, 2 N. Y. Sup. 214.

The principle which rules in controversies under contracts of this kind is strictly analogous to those which prevail in controversies between the officers and members of religious organizations, and it is well settled that in such cases courts will not control the exercise of discretionary powers or direct the course of action in matters of expediency or polity. Dwenger v. Geary, 113 Ind. 106; Supreme Lodge Knights of Pythias v. Knight, 117 Ind. 289; Bacon Benefit Societies (2 Ed.), Sec. 186.

The power to enact by-laws is inherent in every corporation as an incident of its existence. This power is a continuous one. Morawetz on Corporations, 499; Angel & Ames on Corporations, Sec. 329; Niblack Mutual Benefit Societies (2 Ed.), Sec. 24; Bacon on Mutual Benefit Societies (2 Ed.), Secs. 91a, 161a and 185; 3 Am. and Eng. Ency. of Law (2 Ed.), 1065.

Where the contract contains an express provision reserving the right to amend and change the by-laws, the society has the undoubted right so to do. Supreme Commandery, etc., v. Ainsworth, 71 Ala. 449; Stohr v. San Francisco Musical Fund Soc., 82 Cal. 557; Supreme Lodge Knights of Pythias v. Knight, 117 Ind. 489; 3 Lawyers' Reports Annotated, 409; Borgards v. Farmers' Mutual Ins. Co., 79 Mich. 440; McCabe v. Father Matthew Soc., 24 Hun.

.149; Poultney v. Bachman, 31 Hun. 49; St. Pat-
ricks v. McVey, 92 Pa. St. 510; Fugure v. St. Joseph,
46 Vt. 369; Bacon, Mutual Benefit Soc. (2 Ed.),
Secs. 185–188; Niblack, Mutual Ben. Soc. (2 Ed.),
Secs. 24–28; 3 Am. and Eng. Ency. of Law (2 Ed.),
1084–5–6.

Such change, however, can not have a retrospective
effect or divest a vested right. Wist v. Grand Lodge
A. O. U. W., 22 Ore. 271; Becker v. Berlin Ben.
Soc., 144 Pa. St. 232.

A vested right is defined to be, under these con-
tracts, a right on which an actionable property
right has accrued. 3 Am. and Eng. Ency. of Law
(2 Ed.), 1065; Bacon, Mutual Ben. Soc. (2 Ed.), Secs.
185–188; Stohr v. San Francisco Musical Fund Soc.,
82 Cal. 557.

Such changes or amendments in the by-laws, how-
ever, must be reasonable, and must have been adopted
in accordance with the laws of the order. 3 Am. and
Eng. Ency. of Law (2 Ed.), 1065; Bacon, Mutual
Benefit Soc. (2 Ed.), Sec. 85; Niblack, Mutual Ben.
Soc. (2 Ed.), Sec. 23.

In mutual benefit societies, where the law making
body is made up of representatives from subordinate
bodies, the membership of such subordinate bodies
being represented by duly chosen delegates, each
member consents to and is bound by the laws enacted
by such supreme body. Peet v. Knights of the Macca-
bees, 47 N. W. Rep. 119; s. c., 83 Mich. 92.

It is a principle of equity governing the issuing of
injunctions that the court will balance the inconven-
iences and injury, and if it find that the inconvenience
and injury resulting to the defendant will be great
or excessive, if the injunction issues, as compared
with the inconvenience and damage to the com-
plainant, if it be refused, the court will refuse to issue

the injunction. 1 High on Injunctions (2 Ed.), Sec. 13.

Equity is equality. Bispham's Principles of Equity (3 Ed.), p. 60, Sec. 41; Story's Equity Jurisprudnece (13 Ed.), 67.

Mr. Justice Windes delivered the opinion of the Court.

Plaintiff in error, a member of defendant in error, Supreme Council of the Royal League, a corporation of Illinois, organized under the statute concerning corporations, approved April 18, 1872, filed his bill in the Circuit Court of Cook County, on his own behalf and that of other members similarly situated, against said Royal League and the other defendants in error, officers thereof, praying an injunction against all the defendants to prevent them from putting in force certain amendments to by-law six, containing increased rates of assessment, as set up in the bill, from suspending from membership, or from forfeiting the benefit certificate of complainant and other members who may refuse to pay the increased assessment; also praying a decree adjudging such amendments to by-law six unreasonable and void, and setting same aside, and enjoining defendants from hereafter increasing or attempting to increase the rates of assessment in force at the time complainant became a member, without his consent, and from collecting any increased assessment from complainant and others without their consent, and for general relief.

The case was heard by the chancellor upon the bill, answer, exhibits attached to each, and affidavits, as on final hearing, and a decree entered dismissing the bill for want of equity at complainant's costs. Complainant has sued out this writ of error to reverse the decree. The learned chancellor of the Circuit Court

seems to have given the most careful, intelligent and exhaustive consideration to the questions involved, and in deciding the case below delivered an opinion which is embodied in the brief for defendants in error, viz. :

"The defendant is a friendly society, with life insurance powers based upon the assessment plan and duly incorporated in the year 1883 under the laws of this State.

"The complainant is a member claiming the benefit of a contract of life insurance to the extent of four thousand dollars. He holds what is termed a 'benefit certificate' by the Supreme Council of the Royal League, issued to him as a member of Commercial Council, being a subordinate council (No. 26, in Chicago) of said Royal League, bearing date January 2, 1895, in which certificate it is stated, among other things, that it is issued upon the evidence received from said subordinate council that he is a contributor to the 'Widows' and Orphans' Benefit Fund' of the order; that upon condition that the statement made in his application for membership and the representations and agreements, statements and answers contained in the medical examiner's certificate, are made part of the contract, and *upon condition that said member complies in future with the laws, rules and regulations now governing said council and fund, or that may hereafter be enacted by the Supreme Council to govern said council and fund, all of which are made part of the contract,* the Supreme Council of the Royal League promises and binds itself to pay, out of the Widows' and Orphans' Benefit Fund to the beneficiary therein named, a sum not exceeding four thousand dollars ($4,000) in accordance with and under the provisions of the laws governing said fund, upon satisfactory proof of death, etc.

"By-law 6, in force when the certificate was issued,

provided that every person becoming a beneficial member shall pay to the collector the following rates for the benefit of the Widows' and Orphans' Benefit Fund, *and the same amount on each assessment thereafter while he is a member of the order.* Then follows a table of rates running from $1.34 at twenty-one to $3.44 at forty-five years of age, which was called a full rate, by which the complainant, who was of age. thirty-nine, was required to make a payment of $2.62 on each assessment.

"Section 3 of by-law 4 provided 'That an assessment shall be due from each beneficiary member of the order on the first day of each calendar month,' and if not paid during the month a fine could be imposed.

"If the supreme archon should be of opinion no assessment was necessary for any ensuing month, in order to pay the death claims, he could require members to be notified that no assessment would be called for. In case of emergency, a special assessment might be levied at any time, payable within thirty days after notice.

"The constitution adopted by the society declared one of the objects of the society to be to establish a Widows' and Orphans' Benefit Fund, out of which shall be paid on the death of a member to 'the person named as beneficiary' the amount of one assessment, provided that for full rate membership such an amount should not exceed $4,000.

"Section 1 of Article 4 provided that the constitution of the Supreme Council and the laws governing the Widows' and Orphans' Benefit Fund should not be altered or amended, except by a three-fourths vote of the entire membership of the Supreme Council, and that such amendments should be proposed in writing, etc.

"The complainant paid all assessments levied up to

the date of the filing of the bill at the rate mentioned in the schedule contained in the by-law in existence when his certificate was issued.

"At the last annual session of the Supreme Council the by-law containing the table of rates was amended by the adoption of a new table of rates applicable to all beneficial members admitted prior to July 1st, 1897, and all thereafter admitted, by which the rate of assessments was materially increased; the complainant's being increased from $2.62 to $4.52 for each assessment.

"The new by-law also provided that ninety-six per cent of the assessments levied after the 1st of July should be for the benefit of the Widows' and Orphans' Benefit Fund; the remaining four per cent, it appears, was to pay for the expenses of management. An assessment, payable in July, 1897, has been called for, according to the new tables, but it appears that it is not the intention during the coming year to call for any more than shall be necessary to pay death claims promptly.

"In making the change in the by-laws and changing the table of rates, the Supreme Council appears to have proceeded in all respects in the manner required by the constitution. It also appears to have acted in good faith in changing the by-law, and there appears to be no ground for suspecting any fraud or impure motive as influencing this action.

"This increase of assessment was the result of a change of policy on the part of the defendant, taken after due deliberation, upon the recommendation of advisory councils, and after some years agitation of the question of increasing the rates and a creation of a reserve fund in order to put the order upon a secure financial basis.

"The defendant, in its answer, sets forth at length

the considerations that induced and the reasons for this change of policy, among others, that the experience of the Royal League had demonstrated the insufficiency of its original table of assessment and that special assessments had to be called for, which necessarily produced more or less discontent and injury to the membership of the order; that the plan and the new table of rates finally adopted was based upon the following propositions deducted from experience and authority: (1) That the cost of insurance must be based upon the average age of the membership of the society or company furnishing the insurance; (2) That the cost at a given age is determined by reference to certain standard tables of mortality, which have been adopted as the basis of computation by all well informed life insurance societies and by the insurance departments of the several States; (3) that the increase in the average age of the members of a fraternal insurance society is inevitable as the order grows older in years; (4) that the number of assessments necessary to pay current death losses must inevitably increase in each such society unless a table of rates be provided which will enable the society to collect more money during the early years of the membership than is necessary to pay death losses, thereby providing a fund which may be drawn upon in order to avoid special assessments during the later years of the society; that the adoption of said new table of rates was the result of deliberate judgment and great care, and that is was justified and even rendered necessary by the action of other societies organized and conducted upon the like general plan; that the adoption of said new table of rates was not only expedient, but that it was absolutely necessary to the safety of the society and to the protection of its members, and that if said Supreme Council had refused to

heed the warnings of experience and the demands of its advisory bodies, it would have been false to the trust imposed upon it.

"The complainant objects to paying the new rate of assessment, and seeks an injunction prohibiting the defendant from enforcing the call or assessment at the increased rate, on the ground that the certificate issued to him constitutes a contract between himself and the society, by the terms of which no assessment can exceed $2.62; that if the defendants had power to change the by-laws and increase the rate to be paid, it could only be done as to new members and could not have a retroactive effect; that the by-law in any view is unreasonable, and therefore void; and that there is no power to create a reserve fund.

"Also that there is no power to assess for expenses of the management of the Widows' and Orphans' Benefit Fund.

"The main question is whether the benefit certificate constitutes a contract which prevents the society from increasing the table of rates beyond that set forth in the by-law existing at the date of the certificate of membership.

"What was the contract between these parties? The certificate standing by itself does not measure the rights of the parties, but it must be read in connection with the constitution and by-laws of the society and the application for membership.

"The nature, object and purposes of the society and of the 'Widows' and Orphans' Benefit Fund' must also be taken into consideration.

"The statute of 1893, to which the defendant has conformed, and under which it is being carried on, defines a fraternal benevolent society as follows:

" 'A fraternal benevolent society is hereby declared to be a corporation, society or association formed, or-

ganized and carried on for the sole benefit of its members and their beneficiaries and not for profit.'

"And further provides: 'Each such society shall have a lodge system, with a ritualistic form of work or representative form of government, and may make provision for the payment of benefits in case of disability and death, or of either, resulting from either disease, accident or old age of its members. The payment of such benefits in all cases being subject to compliance by the member with the contract, rules and laws of the society.'

"These assessment societies are peculiar in their nature, and, as said in the matter of the Equitable R. F. Ass'n, 131 N. Y. 354, they are 'neither stock nor exactly mutual insurance companies; they could not be exactly described as such in all respects.'

"The assessments are purely voluntary and our statutes appear to recognize that fact in seeming to require that the governing power shall be representative in its character. The beneficiary members who constitute the membership of the Widows' and Orphans' Benefit Fund are a purely voluntary association of members for a definite purpose, to wit, to raise a fund out of which shall be paid on the death of one of its members, to his family or persons dependent upon him as directed, the amount of one assessment, or the amount of his insurance if the assessment exceed that amount.

"The underlying idea is that of absolute equality, equality in the burden of providing the funds pro rata to benefits to be received, and the equality of benefits to be received pro rata the burden borne by those contributing to the fund.

"A scheme was devised which the governing body and its members believed would provide a sufficient fund to pay all insurance or death losses as they occurred; experience has demonstrated that it will not

do so—the necessity of seeing decreasing membership and possible disruption of the society unless some change be made, was made apparent to the representative governing body, the Supreme Council. It resolved to change the by-laws as to rates by increasing the same; the old members object and say, 'Our rates are fixed by the old by-laws; you have power to increase as to new members, but not as to the old members.'

"To increase the rate as to new members only would be absurd and would be useless; there would be no new members, there would be no equality, voluntary equality of burdens. Can it in reason be contended that such an absurd position of affairs was contemplated or was intended, either in the organization of the company or by the parties to the benefit certificate when it was made? Was it contemplated by the parties to the certificate that if the assessment rate mentioned in the certificate should prove ineffectual to raise a fund sufficient to pay death losses, that the society should go on paying them? Clearly not. Was it contemplated that in such an event the governing body should keep on upon the 'old lines' until by loss of members caused by repeated special assessments, certificates would become valueless?

"These parties, the beneficiary members and the society, were not dealing at arms' length making a 'hard and fast' contract, but they were making a cooperative contract arrangement, with the good, the interest of the society and fund as much in view as the interest of the beneficiary member. They had in view not only the interest of the 'loved ones at home' of the member, but also the interest of the 'loved ones at home' of all the beneficiary members of the society. Was there not an implied condition that this governing representative body should alter and change all by-laws that should be necessary to preserve the life

of the society or to accomplish the object and purpose sought in constituting the Widows' and Orphans' Benefit Fund?

"It is not necessary, however, to imply any such condition, for here there was an express agreement to be bound not only by the then constitution and by-laws, but also by any new by-laws or any change that might be made in the existing by-laws governing the Widows' and Orphans' Benefit Fund that the Supreme Council might deem it necessary to make.

"It will not be denied that the parties had power to contract with reference to future by-laws or change of by-laws, and if they did so contract, there is no injustice in enforcing such future or changed by-laws against the parties.   There is no limitation that such changes of by-laws shall not be made for the general good of the Widows' and Orphans' Benefit Fund if it increases the burden of some or all of its members.

"It is contended, however, that the plaintiff has a vested right under his contract, and that no vested right under the contract can be impaired by the society.

"As suggested by the court in 82 California, post, a vested right in what?   It certainly is not a vested right to have the constitution and by-laws remain forever unchanged, but if it is a vested right, it is in a contract which gives the Supreme Council express authority to change the by-laws existing when the contract was made, and to make and incorporate into the contract a new by-law or changed by-law.   That is what has been done, and therefore no vested right has been infringed.   Under such a contract no vested right could exist until the death of the member; then would arise a vested right to have an assessment made in pursuance of the then existing by-laws, and the proceeds, not exceeding the limit of the insurance, paid over.

VOL. LXXIII 22

"Upon a death, what was a contract upon a contingency, became a debt and a vested right to its payment. The beneficial member is not a creditor to the society, nor has he the right to claim the benefit of any fund until the event happens upon which his claim becomes payable, and it must necessarily follow that it shall be subject to the by-laws then governing that fund. The beneficial certificate holder is only entitled to the ripened fruits of his contract; if the fruit should wither and die before maturity, his rights under the contract are gone.

"It must be admitted that there is a conflict of authorities upon the question as to the right of a society to change by-laws which will affect a contract of insurance. Among the authorities which seem to oppose it is one in our Appellate Court—Northwestern Ben. & M. A. Ass'n v. Wanner, 24 Ill. App. 357; also, Ins. Co. v. Connor, 17 Pa. St. 135; Weiler v. Equitable Life, 92 Hun. 277; Mutual Endowment Society v. Essenden, 59 Md. 463.

"In my opinion these cases are decided upon too 'narrow lines,' and without a full appreciation of the nature, the constitution, objects and purposes of these friendly, co-operative or assessment societies.

"The authorities sustaining the view taken by this court, among others, are Dwenger v. Geary, 113 Ind. 106; Bacon, Ben. Society (2 Ed.), Sec. 185; Niblack on Ben. Societies (2 Ed.), Sec. 24–28; Supreme Lodge v. Knight, 117 Ind. 489; Stoher v. San Fran. W. F. Soc., 82 Cal. 557; Supreme Commandery v. Ainsworth, 71 Ala. 449; Seymour v. M. R. F. Life Ass'n, N. Y. Supreme Court (Advance Sheets, Weekly No. 129).

"There may be some question as to the right of this society to assess for a reserve fund, but in my opinion

the Supreme Council has the right, if it decides that it is good policy to do so.

"The act of 1893, which governs this society, seemed to recognize the right to create a special reserve fund, as Section 4 thereof, which requires a report to be made to the auditor, among other things requires that the society report whether it has a special reserve fund, and if so, how it is created and for what purpose, and the amount thereof and how invested.

"In these degenerate days it may well be doubted if it is wise for any voluntary association to create a special reserve fund.

"As to the objection that the new by-law is unreasonable: The new rate appears to have been fixed after mature deliberation, and to be the result of the honest judgment of the Supreme Council.

"It is not for the court to undertake to say that the rate is too large or to determine what would be reasonable; that is left by the law and by the contract of the parties to be determined by the Supreme Council.

"The law does not contemplate that the court shall interpose its judgment as against the honest judgment of the governing body selected by the parties to determine what would be or what would not be a reasonable rate of assessment. If there is any reason for a complaint in this regard, it should be made to the State Auditor, who appears to be intrusted by the statute of 1893 with a supervisory power over these friendly societies. The court certainly can not interfere if the evidence shows, as it does in this case, that the governing body has acted in good faith and upon due deliberation.

"As to the objection that there is no power to assess the expenses of the management of the Widows' and Orphans' Benefit Fund, the statute of 1893 referred to does not prohibit an assessment for the expense of the

management. It would seem, without any special provision, proper that the expenses of the management should be paid out of the assessment collected, and no good reason can be perceived why the Supreme Council has not power to set aside a certain percentage of the assessment to pay the expenses of the management.

"But, as I said in regard to the reserve fund, if there was complaint in this regard, it should be made to the auditor. If the authority to levy the assessment for expenses existed, as I have held it does, it is not for the court to determine whether the assessment is excessive, nor to interfere with the collection of the same unless the action of the governing body in fixing such percentage is shown to have been taken in bad faith, or for corrupt purposes.

"It is recognized law that a court of equity uses great caution, extreme caution, in interfering by injunction with the internal operations or government of these purely benevolent or cooperative, voluntary associations. It is also a principle of equity governing the issuing of injunctions that the court will balance the inconvenience and damages, and if it finds that the inconvenience and damage resulting to the defendant will be great or excessive if the injunction issues, as compared with the inconvenience and damage to the complainant if it be refused, the court will refuse to issue the injunction.

"In this case to issue an injunction would bring such confusion into the operations of this society, and inspire such distrust of its management as to probably cause its total disruption. To refuse it would cause complainant an insignificant loss, as his continuance of his membership of about two years must be entirely voluntary.

"But aside from this salutary rule governing the action of courts of equity in issuing writs of injunc-

tion, the court feels compelled to refuse this injunction upon another ground.

"This statute of 1893 referred to, when carefully examined, it will be seen that it was the intention of the General Assembly to give to the State Auditor a superintendence over, and very large powers in connection with the government of these societies. It provides that all such societies organized under the law of any other State shall be admitted to do business upon filing a copy of their charters with the auditor of public accounts, and obtaining permission to do business from the auditor, with certain conditions and safeguards in regard to granting that permission; and that all societies doing business in this State are required annually, on or before the first day of March of each year, to file with the auditor of public accounts a report of their affairs and operations during the year ending on the thirty-first day of December immediately preceding, and to make the report upon a form which shall be provided by the auditor, which shall contain answers to certain questions, twenty-five in number,— among other things as to the number of certificates issued; the amount of indemnity effected; number of losses incurred; number of losses paid; the amount received from assessments; amount paid members and beneficiaries; number and kind of claims for which assessments have been made; as to claims compromised and resisted, and reasons for resisting the same; as to dues and admission fees charged; total amount received and from what sources; salaries paid to the officers; character of certificates issued; amount of payment guaranteed, if any; whether the society has a special reserve fund, and if so, how created and for what purpose; the amount thereof, and how invested; number of lapsed certificates, and also specially provides that 'the auditor of public accounts is empowered to address

any additional inquiries to any such society in relation to its doings or conditions, or any other matter connected with its transactions relative to the business contemplated by this act, and such officer of such society, as the auditor of public accounts may require, shall promptly reply in writing under oath, to all such inquiries,' requires foreign societies to appoint in writing the auditor of public accounts to be its true and lawful attorney, and provide for the service of process upon such auditor.

"Then, in Section 12 is found this provision: 'Any such society refusing or neglecting to make this report as provided in this act shall be excluded from doing business within this State. Said auditor of public accounts must, within sixty days after failure to make such report, or in case any such society shall exceed its powers or shall conduct its business fraudulently, or shall fail to comply with any of the provisions of this act, give notice in writing to the attorney general, who shall immediately commence an action against such society to enjoin the same from carrying on any business. And no injunction against any such society shall be granted by any court, except on application by the attorney general, at the request of the auditor of public accounts. No society so enjoined shall have authority to continue business until such report shall be made, or overt act or violation complained of shall have been corrected,' etc.

"It also imposes a penalty of a fine of not less than $25 nor more than $200, upon any officer violating such injunction, or punishment by imprisonment in the county jail for not less than thirty days nor more than one year, or both, in the discretion of the court.

"These societies are creatures of the legislature, and the legislature may impose such conditions upon the society or its members as it may deem proper.

"Persons incorporating under it take the burdens as well as the benefits imposed by the legislature.

"The language of the section is very broad, 'no injunction against any such society shall be granted by any court except on application by the attorney general at the request of the auditor of public accounts.'

"It was within the power of the legislature to say that no court should issue an injunction against such society except upon the application of the attorney general at the request of the auditor of public accounts.

"It may be that some question might arise as to the power of the legislature to take away the rights of the court to interfere by way of injunction against such society where the vested right of any person was involved, but it is beyond question that it is within the power of the legislature, and in my opinion such was the intention of the clause referred to, to prohibit interference by any court by writs of injunction with the internal working and government of corporations created under this act.

"In other words, there is a public policy manifested in this act, that the internal operations and the carrying on of such societies, and the government thereof, shall not be interfered with except upon the application of the auditor, and that the auditor in the first place shall determine whether or not there is reasonable cause to believe that a society is exceeding its powers or is conducting its business fraudulently, and that if he determines such is the case, that it shall be his duty to apply to the attorney general and commence proceedings against the society.

"From the very constitution of these societies, it appears to be necessary that some such official should have a general superintendence, and also an advisory power and authority to regulate, to a greater or less extent, the operations of these societies.

"In the case at bar the practical effect of the injunction of this court would be to compel the defendant to abandon a fundamental principle upon which it has determined to conduct its future business, and would necessarily result in a most serious interference with the entire business of the society, and possibly in its destruction.

"I think this case comes within the spirit, if not the letter, of the statutory prohibition against the interference of courts by injunction with the operations of societies of this kind. Seymour v. M. R. F. Life Association, N. Y. Supreme Court (not yet reported). In matter of Louisana Savings Bank, 35 La. Ann. 200.

A full examination and consideration of the exhaustive briefs and oral arguments of counsel and of the record, has convinced us that the conclusions reached by Judge TULEY, as stated in his opinion, are correct, except in so far as he has relied on the statute quoted prohibiting an injunction against such a society as the Royal League, save on application by the attorney general. This statute (Section 12) was modified and repealed by Sections 12 and 14, Ch. 73, Hurd's Stat. 1897, 972, in force July 1, 1897, which was not called to the attention of the chancellor at the trial, July 23, 1897.

But if the statute be left out of consideration altogether, still we are of opinion the learned chancellor's conclusions are correct. The authorities cited in his opinion as being opposed to his view, as also the following additional ones, cited and specially relied on by plaintiff in error, viz.: Margesson v. Mass. Ben. Ass'n, 42 N. E. Rep. 1132; Langdon v. Same, 44 N. E. Rep. 226; Metropolitan S. F. A. Ass'n v. Windover, 137 Ill. 417; Becker v. Berlin Ben. Soc., 144 Pa. St. 232; Gundlach v. Ger. M. Ass'n, 49 How. Prac. 190; and Hale v. Eq. Aid Union, 168 Pa. St. 377, we

think are distinguishable from the case at bar, because in none of them did it appear that in the contract of insurance was there a provision such as in this case, to wit:    That the contract was made, "upon condition that said member complies in future with the laws, rules and regulations now governing said Council and fund, or that may hereafter be enacted by the Supreme Council to govern said Council and fund, all of which are made a part of the contract."

The strongest of these cases for plaintiff in error is the Hall case, *supra*, and in that case the court held that, "The benefit certificate was accepted subject to the right of the corporation to amend its by-laws *and change the contract in so far as the by-laws make it*, but not in so far as the contract is made by the benefit certificate itself."    The following authorities also fully sustain our conclusions, viz.:    1 Joyce on Ins., Secs. 188 and 189;  Poultney v. Bachman, 31 Hun. 49; Fugure v. Mutual Soc., etc., 46 Ver. 362.

The decree of the Circuit Court is affirmed.