STEPHEN W. REYNOLDS & others *vs.* SUPREME COUNCIL OF
THE ROYAL ARCANUM.

Suffolk.    March 26, 27, 1906. — May 18, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, BRALEY, & SHELDON, JJ.

*Fraternal Beneficiary Corporation.*

A fraternal beneficiary corporation which is subject to the provisions of R. L. c. 119
by an amendment of its by-laws may require the assessments paid by its mem-
bers for death benefits to be increased when a member reaches a certain age
instead of remaining at the rate determined by the age of the member when he
received his certificate.

The members of a fraternal beneficiary corporation subject to the provisions of
R. L. c. 119 are bound by the by-laws of the corporation regularly made or
amended, even without an express agreement on the subject such as existed in
this case.

By the prescribed form of application for membership of a certain fraternal bene-
ficiary corporation which was subject to the provisions of R. L. c. 119 every
member agreed to " conform to and abide by the constitution, laws, rules and
usages of the said council and order now in force, or which may hereafter be
adopted by the same." The benefit certificates promised payment out of the
widows and orphans' benefit fund only on condition that the member " complies
in the future with the laws, rules and regulations now governing the said council
and fund, or that may hereafter be enacted by the supreme council to govern
the said council and fund." Under the by-laws then existing the assessments
of the members from which the death benefits were derived were determined by
the age of each member when he received his certificate and thereafter remained
unchanged during the life of the member. Finding that the payments for death
benefits exceeded the receipts from the assessments, the supreme council caused
mortality tables to be prepared and employed competent actuaries to devise a
method, through a change of by-laws, which should enable the corporation to
meet its obligations to its members. Following the recommendations of the
actuaries the supreme council adopted an amendment of the by-laws by which
a member after attaining the age of sixty-five years should pay assessments at
the rate prescribed for an assessment at that age, giving the member an option,
to pay a uniform special rate computed as the equivalent of this requirement,
or to pay a step rate increasing annually from the time of receiving his certificate
to and through the age of sixty-five years and then becoming constant, or to
pay the constant rate which was in force before 'the change in the by-laws
with the full amount of the benefit up to the age of sixty years, subject there-
after to an annual reduction of the amount of the benefit until the age of seventy-
five years when the benefit would be reduced to one half of its original amount
and thereafter would remain unchanged. *Held,* that the amendment of the
by-laws was binding on the members.

BILL IN EQUITY, filed in the Supreme Judicial Court in its amended and substituted form on March 6, 1906, and described in the opinion.

The case came on to be heard before *Braley*, J., who reserved it upon the pleadings and agreed facts for determination by the full court, such decree to be entered as justice and equity might require.

*M. Storey & J. P. Leahy*, for the plaintiffs.

*A. E. Pillsbury*, (*J. H. Butler & C. H. Waterman* with him,) for the defendant.

KNOWLTON, C. J.    This is a bill in equity to set aside certain changes in the defendant's by-laws which affect the rights of certificate holders.    The defendant is a fraternal beneficiary association, organized under the laws of Massachusetts in 1877, and now subject to the provisions of R. L. c. 119, and the acts in amendment thereof.    The plaintiffs are certificate holders, who bring this bill for themselves and in behalf of others.    From the time of its organization the defendant issued certificates to members, agreeing to pay to a designated beneficiary a sum not exceeding a certain number of dollars on the death of the member, upon compliance by him with certain conditions therein stated.    The by-laws provided that the death benefit should be for a definite amount, and payments of these definite amounts have always been made.    The words "not exceeding" are inserted in the certificate to meet the possibility of a single full assessment not being equal to the amount stated.    This limitation of the payment to the amount of an assessment, except when there is an emergency fund, was expressly called for by St. 1899, c. 442, § 11, which is now found in R. L. c. 119, § 6. Until 1898 the assessments paid by members, from which the death benefits were derived, were certain sums dependent upon the age of the member at the time of receiving his certificate, which sums remained the same as the years went by.    These sums were paid to meet assessments as members died, and the amount for the first year would equal the cost to the corporation of the insurance of these members.    But as the members grew older the risk of their death increased, and as their payments remained constant, and as there was at no time a payment of any surplus beyond the amount required to meet losses, the pay-

ments by members of long standing were not nearly enough to equal the cost of their insurance to the corporation. So the only way in which the amounts required to meet losses could be obtained was from the payments made by new members.

In 1898 the by-laws were amended so as largely to increase the payments to be made by all members, and to require the payments monthly. These amendments went into effect on August 1, 1898, and it appears by the agreed facts that no objection thereto has ever been made by any member of the order. These payments, while much larger than those required by the original by-laws, were upon the same relative basis; that is, the increase upon all was in the same proportion, and they were all determined by the age of the member when he received his certificate, and were not to be afterwards changed as a member grew older.

When these amendments were made it was thought that the increase would provide for the future payments called for by the certificates, and that an adequate emergency fund would be created from this income. Under these amendments there was a surplus in 1898 from the excess of receipts above payments amounting to more than $455,000, and afterwards there was annually a steadily diminishing surplus from the same cause to and including the year 1903. In the year 1904 the payments exceeded the receipts, and there was a deficit of $271,540.50.

Before the session of the Supreme Council in May, 1905, the executive committee caused mortality tables of the order to be prepared, and made extended investigations and studies with the aid of competent actuaries, to devise some method, through a change of by-laws, which should enable the corporation to meet its obligations to members. The actuaries prepared for them new tables, each the mathematical equivalent of the others, the first being the regular rates and three others optional alternatives. These were founded upon the payment by the order of the maximum value of each certificate, and the payment by the members of a rate adequate, without further modification or additional assessment, to pay the certificates at the maturity thereof. It is agreed that "competent actuaries would testify, and the case may be taken as though they had testified, that the old plan

of assessments was faulty, according to the assumptions made by actuaries, and that the order could not meet the maximum face of its certificates permanently under it; that upon their assumptions a change was expedient, or necessary; that the plans proposed and adopted were mathematically correct; that if the members paid the amounts fixed in these tables the order could continue to pay the maximum face value of its certificates at their maturity; that such amounts are no higher than necessary for this purpose, and that they fairly and equitably apportion among the members their contributions to the widows and orphans' benefit fund, taking into consideration their age and risk." "The plaintiffs do not controvert this evidence in this case, but reserve the right to discuss its materiality, the basis and theories upon which it rests, and its application to this case." On January 1, 1905, the members of the corporation were 305,083 in number, and they held benefit certificates amounting to $680,848,000.

Under these conditions the changes recommended by the actuaries were adopted by an amendment of the by-laws by an almost unanimous vote of the members of the Supreme Council, and the question is whether the changes are legal and binding upon the members.

From the facts agreed it is plain that a great corporation, managing and controlling important financial interests for hundreds of thousands of families, was conducting its business upon unsound principles, which, if followed without change, would ultimately lead to financial ruin. The first question is, was the change adopted in excess of the defendant's corporate powers, or in violation of the statute governing such corporations. The statutes authorize the adoption of by-laws declaring "the manner in which . . . the purposes of its incorporation may be accomplished." R. L. c. 125, § 6; c. 119, § 2. These by-laws may prescribe the "assessments and benefits in case of disability or death, and the conditions upon which the same shall be paid . . . , the method of the amendment of the by-laws and such other provisions as the corporation may determine." R. L. c. 119, § 2. Such a corporation "may make provision for the payment of benefits in case of death or disability or of both. The funds from which the payment of such benefits shall be made shall be

derived only from assessments collected from the members. . . . Such provisions, funds, assessments and payments shall be as required in the by-laws of the corporation." R. L. c. 119, § 6.

Plainly the statute contemplates that such corporations shall have power to establish by their by-laws a system of giving death benefits which shall be sound and equitable, and founded on principles which can reasonably be expected to furnish proper security for the performance of their contracts with members. The power to make proper changes in these particulars by amendment of the by-laws from time to time is expressly given.

There is no ground for the contention that it is a violation of the statute or of the defendant's chartered rights to provide for such assessments as will be likely to insure the payment of the sums named in the certificates. The statute expressly authorizes, not only a death fund amounting to three full assessments upon the members, but also the accumulation of an emergency fund amounting to five per cent upon the face value of all outstanding benefit certificates. The emergency fund is to be invested in safe securities, and all of these are to be deposited with the treasurer of the Commonwealth. R. L. c. 119, § 7. As the promise to pay the beneficiary is binding upon the corporation, it ought to make adequate provision to obtain the means of payment. *Newhall* v. *American Legion of Honor,* 181 Mass. 111.

The objection that the amendments are illegal by reason of the division of the members into classes cannot prevail.* There

---

* The result of the amendments is as follows: By the regular rates a member pays the same amount upon each assessment until attaining the age of sixty-five years, and thereafter pays the amount upon each assessment prescribed and fixed by the table of rates for the assessment at the age of sixty-five years. By selecting option A. he can pay à uniform special rate for the whole period computed as the equivalent of the regular rates. By selecting option B. he can pay a step rate which increases annually to and through the age of sixty-five years, when it becomes constant. By selecting option C. he can pay the constant rate in force before July 1, 1905, with the full amount of the benefit up to the age of sixty years, when the benefit named in the certificate will decrease annually three and one third per cent thereof until he attains the age of seventy-five years, when the benefit will have been reduced in amount to one half thereof, and will continue thereafter at that amount, the assessment rate remaining unchanged throughout.

is no objection to a classification of members according to age, and it would be unjust to disregard age in determining the rates that different persons shall pay for death benefits in an association of this kind.

The distinctive features of such organizations remain since the adoption of the amendments as well as before. The fraternal plan, with mutuality and without profit, distinguishes the work of such an association from a commercial enterprise. It is a charitable and benevolent organization, with a limitation of membership to a special class, and a limitation upon the choice of beneficiaries. It is not allowed to employ paid agents in soliciting or procuring business, except within very narrow limits prescribed by the statutes. R. L. c. 119, § 16. Looking to the nature and purposes of fraternal beneficiary corporations, we see nothing in the amendments at variance with the law. It cannot have been intended that such corporations should be limited to a method of assessment that would be sure to bring about their early dissolution.

Another question is whether the amendments are in violation of the contract rights of members. It is stated in the record that " the agreements between the plaintiff and the defendant concerning assessments and benefits are not contained in any one specific instrument, but are found in the application for membership, the benefit certificate, the laws of Massachusetts constituting the charter, and the constitution and laws of the order." If there were no express stipulation in regard to the by-laws in the application for membership or in the certificates, all members of such a corporation would be bound by by-laws regularly made or amended. *Durfee* v. *Old Colony & Fall River Railroad,* 5 Allen, 230, 242. *Pain* v. *Société St. Jean Baptiste,* 172 Mass. 319. *Oliver* v. *Hopkins,* 144 Mass. 175. *Spilman* v. *Home Circle,* 157 Mass. 128. *Wright* v. *Minnesota Ins. Co.* 193 U. S. 657. *Knights of Pythias* v. *Knight,* 117 Ind. 489.

Every member of this corporation, at the time of joining it, enters into an express agreement to " conform to and abide by the constitution, laws, rules and usages of the said council and order now in force, or which may hereafter be adopted by the same." *

* These words are in the prescribed form of the application for membership.

The benefit certificates promise payment out of the widows and orphans' fund only on condition that the member " complies in the future with the laws, rules and regulations now governing the said council and fund, or that may hereafter be enacted by the supreme council to govern the said council and fund," etc.   Here in the contract is full authority to amend the laws, rules and regulations.

In regard to a similar provision under which a mutual fire insurance company changed its by-laws, so as to increase the assessments upon certain policy holders, the Supreme Court of the United States uses this language:  " The liability of the members of this institution is of a twofold nature.   It results both from an obligation to conform to the laws of their own making, as members of the body politic, and from a particular assumption or declaration which every individual signs on becoming a member.   The latter is remarkably comprehensive. ' We will abide by, observe and adhere to the constitution, rules and regulations which are already established, or may hereafter be established, by a majority of the insured . . . or which are, or may hereafter be, established by the president and directors of the society.' . . . As to what is contended to be a material alteration in their charter, we consider it merely as a new arrangement or distribution of their funds; and whether just or unjust, reasonable or unreasonable, beneficial or otherwise, to all concerned, was certainly a mere matter of speculation, proper for the consideration of the society, and which no individual is at liberty to complain of, as he is bound to consider it as his own individual act.   Every member, in fact, stands in the peculiar situation of being party of both sides, insurer and insured.   Certainly the general submission which they have signed will cover their liability to submit to this alteration." *Korn* v. *Mutual Assur. Soc.* 6 Cranch, 192.   This part of the present case is covered in principle by the decisions of this court in *Messer* v. *Ancient Order of United Workmen*, 180 Mass. 321, and *Pain* v. *Société St. Jean Baptiste*, 172 Mass. 319, in which cases changes similar to those made by the defendant were upheld under like contracts.   The same general doctrine has been stated in many cases in other courts.   *Wright* v. *Minnesota Ins. Co.* 193 U. S. 657.   *Fullenwider* v. *Royal League*, 73 Ill. App. 321;

*S. C.* 180 Ill. 621.    *Bartram* v. *Royal Arcanum,* 6 Ont. W. R. 404.    *Gaines* v. *Royal Arcanum,* 140 Fed. Rep. 978.    *Fugure* v. *Society St. Joseph,* 46 Vt. 362.    *Knights of Pythias* v. *Knight,* 117 Ind. 489.    *Haydel* v. *Mutual Reserve Fund Assoc.* 104 Fed. Rep. 718.    *Gaut* v. *Mutual Reserve Fund Assoc.* 121 Fed. Rep. 403, 409.    *Richmond* v. *Order of Mutual Protection,* 100 Mo. App. 8.    *Barbot* v. *Mutual Reserve Fund Assoc.* 100 Ga. 681. *Mutual Reserve Fund Assoc.* v. *Taylor,* 99 Va. 208.

There are many cases in which it is held that the amount expressly promised to be paid in a certificate like those issued by the defendant cannot be cut down by an amendment of the by-laws.    *Newhall* v. *American Legion of Honor,* 181 Mass. 111. *Langan* v. *American Legion of Honor,* 174 N. Y. 266.    *American Legion of Honor* v. *Getz,* 112 Fed. Rep. 119.    But in many of these, as in the case from this court last cited, a distinction is made between the express stipulation of the corporation to pay a certain sum and other provisions relating to the methods of the corporation, and the duties of the certificate holders, which properly may be a subject for regulation by by-laws, even though they affect the rights of the parties under their contract. The assessments to be paid for death benefits in this case are provided for by the by-laws, while the promise in writing to pay a certain sum to a particular person is, as to that person, a matter outside of those corporate rules which may be expected to be changed by an amendment of the by-laws.    This promise on one side is set over against the promise of the member on the other.    The promise of the member is to do what may be called for by the by-laws then existing or that may afterwards be adopted.    The promise of the corporation is stated expressly, without mention of the by-laws.    The member occupies a dual position, as an insurer and the insured.    As one of the association agreeing to provide for the payments that may become due to members, he agrees to be subject to the by-laws.    As the insured person to whom a particular sum of money is promised, he has a right to stand on the terms of the promise.

That the duties of members prescribed by the by-laws remain subject to modification when a power of amendment is reserved has often been decided.    *Loeffler* v. *Modern Woodmen of*

*America*, 100 Wis. 79. *Langnecker* v. *Ancient Order of United Workmen*, 111 Wis. 279. *Lawson* v. *Hewell*, 118 Cal. 613. *Gilmore* v. *Knights of Columbus*, 77 Conn. 58. *Ellerbe* v. *Faust*, 119 Mo. 653.

Most of the cases relied on by the plaintiffs, when rightly analyzed, turn on the distinction between an attempted amendment of the by-laws directly affecting the promise to the certificate holder as an insured person and an amendment affecting his duties as a member of the corporation bound to perform his part in providing means or otherwise as one of the association of insurers. *Hale* v. *Equitable Aid Union*, 168 Penn. St. 377. *Fargo* v. *Knights of Maccabees*, 96 App. Div. (N. Y.) 491. *Weber* v. *Knights of Maccabees*, 172 N. Y. 490. *Sautter* v. *Improved Order of Heptasophs*, 43 Vroom, 325. *Tebo* v. *Royal Arcanum*, 89 Minn. 3. *Deuble* v. *Ancient Order of United Workmen*, 66 App. Div. (N. Y.) 323; *S. C.* 172 N. Y. 665. *Beach* v. *Knights of Maccabees*, 177 N. Y. 100. *Starling* v. *Royal Templars*, 108 Mich. 440. *Peterson* v. *Gibson*, 191 Ill. 365. *Wist* v. *Ancient Order of United Workmen*, 22 Ore. 271. *Roberts* v. *Cohen*, 60 App. Div. (N. Y.) 259. *Roberts* v. *Ancient Order of United Workmen*, 173 N. Y. 580. *Ancient Order of United Workmen* v. *Stumpf*, 24 Tex. Civ. App. 309. *Hadley* v. *Woodmen of the World*, 1 Tenn. Ch. 413. *Spencer* v. *Ancient Order of United Workmen*, 53 App. Div. (N. Y.) 627. Other cases cited by the plaintiffs are clearly adverse to the view which we take. See *Ebert* v. *Mutual Reserve Fund Assoc.* 81 Minn. 116; *Strauss* v. *Mutual Reserve Fund Assoc.* 126 N. C. 971; *Benjamin* v. *Mutual Reserve Fund Assoc.* 146 Cal. 34.

On principle and on the weight of authority we are of opinion that there is nothing in this contract that prevents the corporation from amending its by-laws in a reasonable way, to accomplish the purposes for which it was organized, even though the change increases the payments to be made by certificate holders. Such changes necessarily involve some hardship to certain individual members, but the corporation, under the law, should do that which will bring the greatest good to the greatest number. The members who complain of its action are those who have had the benefit of insurance for themselves and their families for many years, at very much less than the cost of their insurance

to the corporation. They have had the good fortune to survive, and therefore their contracts have brought them no money, but all the time they have had the stipulated security against the risk of death. If now they are called upon to pay for future insurance no more than its cost to the corporation they ought not to think it unjust.

*Bill dismissed.*