## LEWIN v. KOERNER BENEV. ASS'N.

(Erie County Court. October 8, 1908.)

1. BENEFICIAL ASSOCIATIONS — AMENDMENT TO BY-LAWS—NOTICE TO MEMBERS —NECESSITY.

While a mutual benefit association may make reasonable amendments to its by-laws, an amendment made without notice to a member is unreasonable.

2. SAME—BENEFITS—REDUCTION OF AMOUNT—AMENDMENT TO BY-LAWS.

The certificate of incorporation of a mutual benefit association provided that its object was to aid its members in case of sickness by contributions as the by-laws might from time to time prescribe, and the by-laws permitted amendments to the constitution upon consent of a majority of those present. Plaintiff received benefits to the amount of $781, under his contract with the association, from 1894 to October, 1899, when the by-laws were duly amended, but without notice to plaintiff, stopping all benefits after a member had received $280. Plaintiff received nothing after that time, though paying dues under his contract. From October, 1896, to October, 1899, the treasury diminished annually about $350; the balance on the latter date being $5,378. *Held*, that the contract under the by-laws neither expressly nor impliedly authorized the reduction of benefits during the contract, and the amendment cutting off plaintiff's right to benefits was not reasonably necessary to further the objects of the association or perpetuate its existence, and hence was invalid.

Action by Fritz Lewin against the Koerner Benevolent Association. Judgment for plaintiff.

See, also, 125 App. Div. 91, 109 N. Y. Supp. 101.

Donnelly, O'Neil & Grass, for plaintiff.

Ferdinand J. Bommer, for defendant.

TAYLOR, J. This defendant is a mutual benefit association. It was incorporated in the year 1873, and has existed as such up to date. The plaintiff is suing the defendant to recover sick benefits claimed to be due from the month of October, 1899. The case has been tried three times. On the first occasion the jury disagreed. On the second trial the jury rendered a verdict for plaintiff, which was reversed and a new trial granted. An opinion was written, which is reported in 125 App. Div. 91, 109 N. Y. Supp. 101. At this trial, when the testimony

was in, both parties asked for a direction of a verdict. I believe it is proper that I state my reasons for finding in the plaintiff's behalf.

It appears from the testimony that the plaintiff helped organize the defendant association in 1870, was one of its incorporators in 1873, and has ever since been a member. It further appears that the constitution contained certain provisions concerning sick benefits from 1893 up to April, 1898; that on the last-mentioned date an amendment thereto was made cutting down benefits receivable, but continuing the payment of $1 per week from said date to members situated similarly to the plaintiff; that in October, 1899, another amendment was made stopping all sick benefits after a total of $280 had been received by a member on that account. The plaintiff became incapacitated, under his contract with the association, in 1894. Up to October, 1899, the plaintiff had received, under the constitution and by-laws as amended these several times, a total of $781.09. After that date he received nothing, although he met all his obligations to the association. The testimony convinces me that the plaintiff acquiesced in all the amendments, except the last—the one in question. As to that, I believe the weight of evidence to be in his favor. The certificate of incorporation contains the following:

"That the object of such society shall be to aid its members in case of sickness, and the families of the deceased members of such society, by means of contributions as the by-laws of the society may from time to time prescribe."

Section 28 of the by-laws reads partially as follows:

"Sec. 28. Amendments to the constitution and by-laws can be adopted in the following manner, whereby it is necessary at all times that the majority of those present give their consent."

The sentences quoted contain the only provision in either set of regulations bearing on the question under discussion. It further appears that the balance in the treasury of the association from October 1, 1896, to October 1, 1899, diminished annually about $350; the balance on October 1, 1899, being $5,378.78. The last amendment, that of October 3, 1899, was regularly adopted at a regular meeting, though there is no proof that notice was given to the plaintiff that such an amendment was under consideration, until he was notified of its adoption and that under it his benefits ceased.

It appears to be well settled in this state, as stated in Ayers v. A. O. U. W., 188 N. Y. 280, 80 N. E. 1020, that:

"While the defendant had a right to make reasonable by-laws, such an amendment, made without notice to the insured, was unreasonable."

Judge Vann further says in the opinion, citing many authorities:

"It is well established by these authorities that a general power, reserved either by statute or by the constitution of a society, to amend its by-laws, does not authorize an amendment impairing the vested rights of members. An amendment of by-laws which form part of a contract is an amendment of the contract itself, and when such a power is reserved in general terms the parties do not mean that the contract is subject to change in any essential particular at the election of the one in whose favor the reservation is made."

The opinion setting aside the verdict in this case (125 App. Div. 91, 109 N. Y. Supp. 101) seems to hold that under the constitution and

by-laws of this defendant association it had the right, as to this plaintiff, to make the amendment in question, reducing the amount of benefits receivable, providing such amendment was reasonably necessary, considering the condition of the society financially. This, of course, stands as the law of this case, and my duty as judge and jury is to apply the test as to reasonableness. In preparation for this I have examined the authorities with some care. Beach v. Supreme Tent K. of M., 177 N. Y. 100, 69 N. E. 281, is a leading case; and while its facts are not fully comparable with those in the case under consideration, these words on page 105 of 177 N. Y., and page 283 of 69 N. E. in the opinion are significant:

"Under the doctrine of these cases we think that the obligations assumed by the defendant in its certificate of membership should not be impaired by provisions of the constitution and by-laws of the order to which the attention of the member might never be called, or at least should not be cut down under the reservation of the power to amend. It is quite easy for fraternal organizations such as the defendant, if they deem the provisions for benefits to their members tentative only and desire to have them subjected to such modification as the business of the orders may require, to express that in the certificate. So in the present case, if the certificate had provided that the payments therein specified should be subjected to such modification as to amount, terms, and conditions of payment and contingencies on which the same were payable as the endowment laws of the order might from time to time provide, the amendments would be applicable to existing members. But I think that nothing less explicit than this appearing in the certificate itself should be effectual for such a purpose. Fairness to persons joining the order require such plain dealing."

In this case it further appears (page 104 of 177 N. Y., page 281 of 69 N. E.) that the constitution of the order contained a provision specifically authorizing an amendment of the endowment laws.

Mock v Supreme Council, 121 App. Div. 474, 106 N. Y. Supp. 155, is authoritatively cited in the opinion in 125 App. Div. 91, 109 N. Y. Supp. 101, hereinbefore mentioned. That was an action brought to restrain the enforcement of by-laws, as amended, concerning increased assessments. The opinion in the Mock Case goes on to say:

"The amendment was authorized by the laws of the state (Massachusetts) which created the defendant."

In the case at bar can it be said that any such amendment was authorized by the New York statute?

The opinion further says:

"It may be assumed that this amendment was necessary to perpetuate the life of the society."

Was the amendment of October 18, 1899, at the time it was made in the case at bar, necessary to preserve the life of the society and to perpetuate the purposes for which it was organized? I cannot so hold.

Then the opinion says:

"There is no express provision that the laws shall remain unchanged."

Can it be argued from this remark—inasmuch as the constitution and by-laws of the Koerner Benevolent Association contain no express statement that the amount of sick benefits receivable thereunder should be changed—that any sort of change therein would be proper?

Further, the opinion goes on:

"There is nothing in the by-laws limiting the amount which any member might be assessed, but there are express provisions for extra assessments. * * * The by-laws are subject to amendment under the generally reserved power."

The same cannot be said with relation to the case at bar.

The Mock Case refers to Raynolds v. Royal Arcanum, 192 Mass. 150, 78 N. E. 129, 7 L. R. A. (N. S.) 1154. That case not only holds that the Massachusetts statute gives express power to amend by-laws in this particular (page 104 of 177 N. Y., page 281 of 69 N. E.), but that the contract of the member with the society gives full authority so to do—a situation quite different from that found in the case at bar.

The conclusions in the Mock opinion are also based, partially at least, on the impossibility of enforcing the judgment of the court below. The court says (page 477 of 121 App. Div., page 155 of 106 N. Y. Supp.) that the by-laws were amendable under general reserved power, and seems to intimate that, while the amount of assessments was not fixed and unalterable, the amount of benefits was. Inasmuch as the surplus of the defendant in the case at bar was dwindling about $350 per annum, but still on October 1, 1899, amounted to nearly $5,400, was it not the duty of this defendant, under the express provisions of its constitution and by-laws, as they read at this time, if anything, to raise its rate of contribution and leave the benefits as they were originally provided for?

In Poultney v. Bachman, 31 Hun, 49, relied on by the defendant, there was an express provision in the constitution and by-laws, when the plaintiff joined, that the lodge might alter or amend its by-laws. This was held to be a part of the contract. In our case there was no such provision. The only thing that squints at it is the provisions that the society shall pay benefits by means of contributions as the by-laws of the society may from time to time prescribe. So, even though it may be held that the plaintiff made an express contract that the by-laws could be changed so that all members should pay larger assessments, there is not even a general provision for reducing the amount of benefits receivable.

A careful consideration of the opinion and of all the facts in the Berg Case, 90 App. Div. 474, 86 N. Y. Supp. 429, satisfies me that I am not compelled under it to find for the defendant here. The circumstances were in many respects different, and acquiescence by the plaintiff in the amendment made in that case was found by the court. While in the case at bar, as in the Berg Case, the plaintiff had received much more than he had paid in, and while I believe that mutual benefit societies, wherein the members are both insurers and insured, should be allowed to so regulate their affairs as to properly conserve the interests both of the society as a whole and of the individual member, still, in the absence of specific provision somewhere in some of the documents defining the relation of the society and its members bearing on the matter, I fail to see the justice of allowing a contract actually in process of performance, as this one was, to be rendered a

nullity under some theory not only general, but not even expressed generally.

What must we understand by the term "vested right"? Evidently the right to change one's occupation from that of a molder to a hotel keeper is "vested." 188 N. Y. 280, 80 N. E. 1020. So, too, seems to be the right to have an endowment paid at once, and not in ten annual installments. 177 N. Y. 100, 69 N. E. 281. Other examples may be found in the opinions of the highest court in this state. This plaintiff had a contract with the defendant, based on a valuable consideration, entitling him to these sick benefits. That contract, in my judgment, nowhere in express terms or by implication authorized the defendant to reduce those benefits. At most, it intimated that the amount of contributions from members might be altered. Such authorization, then, must be found in the general wording and purport of the certificate of incorporation, or of the constitution and by-laws of the defendant, or of the installation agreement and the needy financial condition of the association. Under this "general" theory such authorization should not be read in, unless the last-named condition be clearly apparent, viz., existing or impending financial stringency; and in this respect I find no such state of affairs. So it makes really no difference whether it be called "impairing a right vested under all the circumstances," or "unreasonably exercising a permitted form of amendment under the circumstances." The plaintiff had fully performed every duty incumbent upon him under his contract. He was sick, entitled to receive benefits under his contract, was receiving them, and without his consent they were cut off. I believe that this amendment was unreasonable as to this plaintiff.' His rights under his contract in this respect were such that they should not thus be taken away. I believe that a deprivation of such contractual rights, even in a mutual benefit society, cannot be upheld under a power so meager and general, having regard for every circumstance, including the condition of the surplus fund of this defendant.

The plaintiff should have judgment for $260 and interest from October 10, 1904, to time of trial, to wit, $321.10, with costs.